UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| TREVOR FITZGIBBON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:19-cv-477-REP |
| vs. | ) | |
| | ) | |
| JESSELYN A. RADACK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
JESSELYN A. RADACK'S MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1), (B)(2), AND (B)(6)**

Defendant Jesselyn A. Radack ("Radack" or "Defendant"), by counsel, and pursuant to

Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(6), submits this Memorandum of Points and Authorities

in Support of her Motion to Dismiss the Amended Complaint filed herein by Plaintiff Trevor

Fitzgibbon ("Fitzgibbon" or "Defendant"), and in support thereof, states as follows:

## OVERVIEW

Plaintiff's Amended Complaint states that the Settlement Agreement entered into between

the parties resolving the prior lawsuit (the "Radack Action") "is a valid and enforceable contract."

Am. Compl. ¶ 23.  Yet, Plaintiff would have this Court believe that the Settlement Agreement

consisted solely of Radack's agreement not to post, or direct others to post, anything on social

media that mentions Plaintiff or that is, of or concerning, Plaintiff.[1]  *See* ¶ 4(a)-(c) of redacted

Settlement Agreement attached hereto as **Exhibit A**.  However, this was only one of the bargained-

---

[1] This term of the Settlement Agreement was a mutual obligation by the parties.  As will be detailed in Radack's Counterclaim should the instant case proceed, Plaintiff has materially breached this provision on numerous occasions.

for exchanges made in the Settlement Agreement and cannot be applied in a vacuum.  The parties also anticipated that a breach of Paragraphs 4(a)-(c) may occur in the future and contracted to limit the remedies available in the event of such breach.  In Paragraph 4(e) of the Settlement Agreement, Plaintiff "acknowledge[d] and agree[d]" that his sole remedy for a material breach would be the "amount $1,000 for each, tweet, retweet, reply, like, post or comment that violates paragraphs 4(a), 4(b)[sic], or 4(c)" of the Settlement Agreement. *See* Exh. A, ¶ 4(e).

Pursuant to the calculation explicitly set forth in the Settlement Agreement, the Plaintiff can recover at most $20,000 which assumes, *arguendo,* that he is able to prove the alleged material breaches set forth in the Amended Complaint; this sum does not exceed the amount in controversy requirement of $75,000.00 set forth in title 28 U.S.C § 1332.  Moreover, Plaintiff's fraudulent inducement claim does not allege a false representation, justifiable reliance, or resulting damage, and therefore must fail.  Plaintiff's Amended Complaint should also be dismissed because Radack is not subject to personal jurisdiction in Virginia.  For these reasons, all Counts in Plaintiff's Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, Count I, IV, and V of the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and Counts II, III, IV, and V should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move the court to dismiss any claim upon which, as a matter of law based on the allegations in the complaint, relief cannot be granted. *Hewlette v. Hovis,* 318 F.Supp.2d 332, 335 (E.D. Va. 2004). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, -*-- U.S. ----, 127 S.Ct. 1955, 1959 (2007). The court must accept the complaint's factual allegations

as true and view all allegations in a light most favorable to the non-moving party. *Hewlette,* 318 F.Supp.2d at 335 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). The plaintiff has the burden of alleging facts sufficient to state all elements of a claim. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). In reviewing a motion to dismiss, a court need not take as true bare legal conclusions that are unsupported by factual allegations. *Taubman Realty Group Ltd. Partnership v. Mineta*, 320 F.3d 475, 479 (4th Cir. 2003).

Federal courts have limited jurisdiction, and the statutes that define the scope of their jurisdiction are strictly construed out of "[d]ue regard for the rightful independence of state governments." *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109 (1941). Once the propriety of the amount in controversy is challenged under Federal Rule of Civil Procedure 12(b)(1), the party seeking to invoke the subject matter jurisdiction of the federal courts has the burden of proving jurisdiction by showing, to a legal certainty, that the claim for relief is not less than the statutorily prescribed jurisdictional amount. *McKinney v. Stonebridge Life Ins. Co.,* Case No. 4:06cv00029, 2006 US Dist. LEXIS 62869, *3 (Sept. 1, 2006). Thus, the burden is on Plaintiff in this case to prove the amount in controversy is greater than $75,000.

Lastly, when a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), as is the case here, the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Dowless v. Warren-Rupp Houdailles, Inc.,* 800 F.2d 1305, 1307 (4th Cir 1986).

## ARGUMENT

### A. Plaintiff's Fraudulent Inducement Claim Fails as a Matter of Law.

In Count I, Plaintiff seeks to state a claim for fraud in the inducement. A plaintiff asserting a cause of action for fraudulent inducement bears the burden of proving by clear and convincing evidence the following elements: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Persaud Cos. v. IBCS Group, Inc.* 425 Fed. Appx. 223, 226 (4th Cir. 2011). Here, Plaintiff has not sufficiently alleged reasonable reliance, a false representation, or resulting damage, and therefore Count I should be dismissed.

#### 1. Reasonable Reliance

It is simply axiomatic that "to establish fraud, it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation." *Metrocall of Delaware v. Cont'l Cellular Corp.*, 246 Va. 365, 374 (1993) (*quoting Pettinelli v. Danzig*, 722 F.2d 706, 709 (11th Cir. 1984), and noting that "some courts label this requirement 'justifiable reliance'"); *Sweely Holdings, LLC v. Suntrust Bank*, 820 S.E.2d 596, 605 (Va. 2018) (one element of fraud, particularly fraud in the inducement, is that the victim reasonably relied upon the misrepresentations that allegedly constituted the fraud; absent such reasonable or justifiable reliance, no fraud is established).

Plaintiff alleges that he "reasonably and justifiably relied" upon Radack's representation that she would not post, or direct anyone else to post, anything on social media of, or concerning, the Plaintiff. Am. Compl. ¶¶ 11-12. Plaintiff cannot, however, establish that he justifiably relied on any statements made by Radack, a person who he has made abundantly clear he does not trust. In the first lawsuit, Plaintiff describes Radack as being an "unlawful, immoral, and unethical"

woman, who "bore false witness" and engaged in "deceitful and illegal conduct" with "ulterior motives . . . which demonstrate a vengeance and willingness to injure the Plaintiff at all costs." *See Introduction* Plts. Amended Complaint (Case No. 3:18-cv-00247-REP) (Dkt. No. 12).  In the first lawsuit, Plaintiff goes on to allege that Radack lied on multiple occasions and was dishonest to law enforcement and her own family, including that she "falsely accused [Plaintiff] of heinous crimes," and that "Radack made statements with actual knowledge that they were false and with reckless disregard for the truth." *Id.* at ¶ 10.  Immediately after the parties entered into the Settlement Agreement, and before the Radack Action was even dismissed, Plaintiff filed a motion arguing that Radack should be held in contempt for violating a Restraining Order and Plaintiff purports to give a history of Radack's conduct, which although grossly inaccurate, states that in Plaintiff's view Radack has: "Spoilated Evidence," "Misrepresented the Court's Ruling on her Motion to Seal," "Submitted a False or Misleading Declaration To The Court," "**Continued to Publish Defamatory Statements,**" and made a "Bad-Faith Bankruptcy Filing."  *See* Plts. Verified Reply to Defendant's Response to Show Cause (Case No. 3:18-cv-00247-REP) (Dkt. No. 91) (emphasis added).  Despite all of the foregoing statements which clearly establish that Plaintiff believes that Radack is dishonest and a liar, Plaintiff now seeks to take the position that he "reasonably relied" upon statements made by Radack.

The Supreme Court of Virginia case *Metrocall* is virtually on all fours with the instant case with respect to its holding that "when negotiating or attempting to compromise an existing controversy over fraud, dishonesty, and self-dealing, it is unreasonable to rely on the representations of the allegedly dishonest party." *Metrocall of Delaware, Inc. v. Cont'l Cellular Corp.,* 246 Va. 365, 375 (1993).  In *Metrocall*, an initial action was commenced "by parties holding a minority interest in [a company] complaining that a majority entity, which was the managing

5

general partner, was guilty of a number of improper and fraudulent acts." 246 Va. at 367. This suit was subsequently settled with the parties executing a 15-page general release and agreeing to dismissal with prejudice. *Id.* As part of the settlement agreement, "the minority partners agreed to assign their interests to the majority group for an agreed sum per unit." *Id.* After the sale was consummated, however, the purchasers sold the interests "to a third party for a unit price greater than the price paid to the minority group." *Id.* The minority partners learned that "during the settlement negotiations in the prior litigation, the defendants were simultaneously and covertly conducting negotiations to sell the entire partnership to the third party for the higher price." *Id.* A second suit was filed alleging that "this failure to disclose was fraudulent and was done for the purpose of inducing the plaintiffs to enter into the settlement agreement to their detriment." *Id.*

Examining these facts, the *Metrocall* court concluded that, as a matter of law, "the plaintiffs had no right reasonably to rely upon any misrepresentations or concealment of facts by the defendants in connection with the settlement and execution of the release; there was no justifiable reliance." *Id.* at 374. As explained in a subsequent opinion by the Supreme Court of Virginia,

> [i]n its broader context, *Metrocall* dictates that parties to a settlement agreement that were in an adversarial relationship and represented by counsel at the time of negotiation and settlement . . . will be strictly held to this reasonable reliance standard under Virginia law when seeking to vitiate the settlement based on claims of detrimental reliance on the misrepresentations and/or omissions of information by the adversary.

*Murayama 1997 Tr. v. NISC Holdings, LLC*, 284 Va. 234, 248 (2012). The holdings in *Metrocall* and *Murayama* are equally applicable to the instant case. In the Radack Action, there was an adversarial relationship, both parties were represented by counsel at the time of the negotiation and settlement, and at each and every turn during the prior litigation Plaintiff seized upon the opportunity to paint Radack as a lying and dishonest individual. Moreover, all of the causes of action alleged in the prior lawsuit, which include malicious prosecution, defamation,

insulting words, abuse of process, and conspiracy, seek to attribute fraudulent and dishonest behavior to Radack. *See Schaecher v. Bouffault*, 290 Va. 83, 91 (2015) (to establish cause of action for defamation an actionable statement made must be false); *Goulmamine v. CVS Pharm., Inc.*, 138 F. Supp. 3d 652, 669 (E.D. Va. 2015) (words uttered which falsely convey the charge of a criminal offense involving moral turpitude are insulting and actionable under the insulting words statute); *Donohoe Const. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 540 (1988) (process is maliciously abused when it is used oppressively or as a means of extortion).

Plaintiff's allegation of "reasonably reliance" is also completely undermined by the fact that the parties contemplated at the time of the Settlement Agreement that future breaches, consisting specifically of defamation, disparagement, or simply social media posts "of or concerning" the other party may occur, which is why the Settlement Agreement includes a liquidated damages clause. The conduct covered by the liquidated damages clause is exactly the same conduct for which the Plaintiff seeks relief in the instant Amended Complaint. Therefore, Plaintiff's argument that he was induced into the Settlement Agreement is completely without merit. The four corners of the Settlement Agreement, which Plaintiff concedes is valid and enforceable, make clear that Plaintiff never believed any representations made by Radack which is why he assigned a damage value to the future breaches he anticipated would occur. Plaintiff has not sufficiently alleged justifiable reliance on any statement made by Radack and, thus, Plaintiff's fraudulent inducement claim should be dismissed.

### 2.   False Representation of Material Fact

Plaintiff has also failed to allege a critical element of a fraudulent inducement claim—a false misrepresentation by Radack—asserting only an allegedly unfulfilled promise or statement as to future events. Generally, "[b]ecause fraud must involve a misrepresentation of a present or

a pre-existing fact, fraud ordinarily cannot be predicated on unfulfilled promises or statements regarding future events." *SuperValu, Inc. v. Johnson*, 276 Va. 356, 367 (2008).  Virginia courts have long adopted this requirement, recognizing that "[w]ere the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." *Lloyd v. Smith*, 150 Va. 132, 145 (1928).  Despite this general requirement, "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *Supervalu*, 276 Va. at 368.  Here, the alleged misrepresentation relates to a promise not to post certain information on social media in the future, and Plaintiff does not sufficiently allege that Radack had no intention to perform at the time she made the promise.

Plaintiff seeks to support his conclusory allegation that Radack had no intention of performing her promise at the time it was made by alleging that "exactly **one day** after the effective date of the settlement agreement – Radack and third parties acting in concert with her published . . . false and defamatory statement of or concerning Fitzgibbon." Am. Compl. ¶ 27 (emphasis in original).  Plaintiff's allegation that Radack defamed him "exactly one day" after the agreement was executed is an inaccurate statement contradicted by Plaintiff's own pleadings.  As part of the Settlement Agreement, Radack was required to post on her timeline the following statement:

> "Since April 2018, I have been involved in litigation with Trevor Fitzgibbon.  We have amicably resolved our differences.  As part of the settlement, I retract and withdraw every allegation and statement I have ever made about Mr. Fitzgibbon." (the "Radack Statement").

Exh A, ¶ 2.  It was inevitable that one or more of Radack's 36,500 followers was going to like, reply, or respond to this statement on social media, which indeed did occur.  The fact that someone responded to a statement that Radack was required, as part of the Settlement Agreement to post, is not by any stretch of the imagination a basis for a fraudulent inducement claim.  If

8

Plaintiff did not want people to exercise their First Amendment rights and voice their opinions about the Radack Statement, then he should not have insisted it be a part of the settlement in the first place.

### 3.   Resulting Damage

Lastly, when a party elects to affirm a contract allegedly induced by fraudulent misrepresentations the party may only seek tort damages.  These damages are measured using the "benefit of the bargain."   In other words, "[t]here is no damage where the position of the complaining party is no worse than it would be had the alleged fraud not been committed." *Community Bank v. Wright,* 221 Va. 172, 175 (1980) (citations omitted).   Here, Plaintiff's suggestion that he is somehow harmed in the amount of three million dollars due to the fact that he settled the Radack Action strains all credulity.  Plaintiff has not, and cannot, sufficiently allege that he is in a worse position by accepting the agreed upon settlement amount in the Radack Action and releasing claims against Radack, because Plaintiff agreed that the settlement amount was a fair and adequate valuation of his claims alleged in the Radack Action.  Whether or not future breaches of the Settlement Agreement occurred, which were indeed specifically contemplated in the Settlement Agreement, does not change the "benefit of the bargain" or put Plaintiff in a worse position.  For all of the foregoing reasons, Count I of Plaintiff's Amended Complaint should be dismissed.

**B.  The Damages Claimed by Plaintiff in his Breach of Contract (Count II), Defamation *Per Se* (Count III), Common Law Conspiracy (Count IV), and Personal Trespass and Computer Harassment (Count V) Causes of Action are Barred by the Liquidated Damages Clause in the Settlement Agreement and as Result this Court Lacks Subject Matter Jurisdiction.**

It has been well established that, "the existence of subject matter jurisdiction is a prerequisite for the maintenance of an action in federal district court." *Royo v. Commonwealth of*

*Virginia,* Case No. 3:96-cv-161, 1996 U.S. Dist. LEXIS 7697, *4 (E.D. Va. Apr. 11, 1996).

Therefore, "when it becomes apparent—from a challenge by a party under Rule 12(b)(1) or from

a *sua sponte* review—that the Court lacks subject matter jurisdiction, the Court is duty-bound to

dismiss the action. *Id.* (citations omitted).  The Court "is free to look beyond the jurisdictional

allegations of the complaint and view whatever evidence has been submitted on the issue to

determine whether in fact subject matter jurisdiction exists." *Id.* (citations omitted).

Here, Plaintiff elected to sue for tort and contract damages and as a consequence, "affirmed

the contract and consented to be bound by its provisions."  *CGI Fed. Inc. v. FCi Fed., Inc.* 295 Va.

506, 520 (2018) (citations omitted).  "Accordingly, the parties' express contract remains in effect."

*Id.*  The damages claimed by Plaintiff in the instant Amended Complaint blatantly ignore the fact

that the Settlement Agreement contains the following liquidated damages provision:

> The Parties acknowledge and agree that a material breach of the provisions of this paragraph 4 would result in significant damage to the non-breaching Party.  The Parties hereby acknowledge and agree that the amount of damages in the event of a material breach of the provisions of this paragraph 4 would be difficult or impossible to determine and that the amount $1,000 for each tweet, retweet, reply, like, post or comment that violates paragraphs 4(a), 4(b)[sic] or 4(c) is the best and most accurate estimate of the damages the non-breaching Party would suffer in the event of a material breach of this paragraph 4, that such estimate is reasonable under the circumstances existing as of the date of this Agreement and under the circumstances that the Parties reasonably anticipate would exist at the time of such breach and that the breaching Party agrees to pay the non-breaching Party that amount as liquidated damages, and not as a penalty, if the non-breaching Party asserts, and a court of competent jurisdiction confirms, such a material breach.  The burden of proof in any action alleging a breach of this paragraph 4 shall be proof by clear and convincing evidence.

Exh. A, ¶ 4(e).  In Plaintiff's Amended Complaint, he states that the "settlement agreement

is a valid and enforceable contract" and he includes a direct quote of Paragraph 4(e), the liquidated

damages clause in the Settlement Agreement. Am. Compl. ¶¶ 18, 23.  Plaintiff, however, seeks to

ignore, or evade, this contract provision and seeks over three million in damages for alleged

breaches of the Settlement Agreement. Pursuant to the calculation explicitly set forth in the Settlement Agreement, the most Plaintiff can recover, assuming he is able to even prove a material breach, would be $20,000 which is well under the amount in controversy requirement for federal court subject matter jurisdiction.

Parties to a contract "may agree in advance about the amount to be paid as compensation for loss or injury which may result from a breach of the contract '[w]hen the actual damages contemplated at the time of the agreement are uncertain and difficult to determine with exactness and when the amount fixed is not out of all proportion to the probable loss.'" *301 Dahlgren Ltd. P'ship v. Bd. of Suprv'rs*, 240 Va. 200, 202-03 (1990) (*quoting Taylor v. Sanders,* 233 Va. 73, 75 (1987); *Perez v. Capital One Bank,* 258 Va. 612, 615-16 (1999). The case law is clear that the stipulated amount, "forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount. No larger or smaller sum can be awarded though the actual loss may be greater or less. Put another way, 'a liquidated damages clause in a contract is an advance settlement of the anticipated actual damages arising from a future breach.'" *4U Promotions, Inc. v. Excellence in Travel, LLC*, Case No. 2:15-cv-1673, 2017 U.S. Dist. LEXIS 126729, *8 (S.D. Oh. Aug. 9, 2017).

Here, the Settlement Agreement provides for liquidated damages in the amount of $1,000 for any statement, disparaging, defamatory, or otherwise made on social media of or concerning the other party. Exh. A, ¶ 4(e). This amount was agreed to in advance by the parties as the "best and most accurate estimate of damages the non-breaching [p]arty would suffer," resulting from a future breach of Paragraphs 4(a)-(c) of the Settlement Agreement because the parties specifically acknowledged that such damages would be "difficult or impossible to determine." *Id.* As specifically acknowledged by the parties in the Settlement Agreement, the amount of damages for

11

future claims related to defamatory posts on social media are notoriously uncertain. *See WJLA-TV v. Levin*, 264 Va. 140, 162 (2002) (*quoting News Leader Co. v. Kocen,* 173 Va. 95, 103 (1939) ("[w]ith respect to claims of defamation, we have said that '[t]o ascertain what is a fair and reasonable compensation for such an injury, inflicted under the circumstances, is not easy. It has been repeatedly stated that there is no rule of law fixing the measure of damages, nor can it be reached by any process of computation'"); *see also Gazette, Inc. v. Harris*, 229 Va. 1, 41 (1985) (there is no fixed standard for measuring compensatory damages in a libel action, and the amount of the award is largely a matter of discretion with the jury to be based on the facts and circumstances of each case).

The Settlement Agreement is consistent with the conclusion that the parties intended damages in the amount stated.  The language of the liquidated damages provision is clear with respect to the reasons supporting the parties' choice of this amount.  The liquidated damages clause is not a boiler plate liquidated damages provision; rather, it was freely negotiated by the parties both represented by counsel and possessing equal bargaining power.  The parties—Radack an attorney and Fitzgibbon a "global public relations and communication[s] strat[egist]"—cannot fairly be characterized as unsophisticated. Am. Compl. ¶¶ 5-6.  Moreover, the parties have a long history of litigation, which include the Plaintiff filing a bar complaint and numerous lawsuits against Radack and her employer, this suggests that the parties were well aware that the $1,000 per violation amount was an accurate estimation of damages in the event of a future breach.  The purpose of settlement is to end litigation, not to provide a breather before the next round, which is Plaintiff's clear intent here and should not be allowed.  For these reasons, the maximum amount Plaintiff could recover under Counts II, III, IV and V—all causes of action which stem from future alleged breaches of the Settlement Agreement governed by Paragraph 4(e)—is $20,000 which

12

comes nowhere near the statutory requirement of $75,000. Accordingly, Plaintiff's Amended Complaint should be dismissed for lack of subject matter jurisdiction.

### C. Plaintiff's Common Law Conspiracy Claim Fails as a Matter of Law (Count IV).

Plaintiff's conspiracy claim fails to meet the pleading standards set forth in *Ascroft v. Iqbal,* 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007). Under *Twombly,* the Supreme Court of the United States found that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face" in order to avoid dismissal under Rule 12(b)(6). Here, the Amended Complaint is devoid of any facts which would support a plausible inference that Radack conspired with any of the arbitrarily individuals listed, some identified by Twitter handle only. Plaintiff's claim fails to allege any facts concerning the parameters of the alleged conspiracy, including the basis for it or any details concerning the purported agreement. Nor does Plaintiff supply any allegations suggesting when or how Radack entered into an agreement to act jointly with the listed individuals to injure Plaintiff. The Amended Complaint fails to set forth a factual basis which would even lead to the conclusion that Radack has any connection whatsoever with the alleged co-conspirators. It appears that Plaintiff's sole basis underlying his claim that a conspiracy existed is that random third parties posted information about him on social media at various times this year. At most, Plaintiff's allegations amount to broad-brush general allegations which fail to comply with the particularity requirements of Rule 9(b). Accordingly, Plaintiff's conspiracy claim should be dismissed.

### D. Plaintiff's Claims for Personal Trespass and Computer Harassment Must be Dismissed (Count V).

In Count V, Plaintiff seeks to assert a claim under the Virginia Computer Crimes Act ("VCCA"). The VCCA provides for civil liability where "[a]ny person whose property or person is injured by reason of a violation of any provision of this article." Va. Code § 18.2-152.12(A).

Specifically, Plaintiff claims violations of § 18.2-152.7 (personal trespass) and § 18.2-152.7:1 (computer harassment).  To state a claim for personal trespass by computer, a plaintiff must show that the defendant "use[d] a computer or computer network to cause physical injury to an individual."  Va. Code § 18.2-152.7(A).  To state a claim for computer harassment, Plaintiff must plead that defendant "used a computer or computer network to communicate obscene, vulgar, profane, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act."  Here, Plaintiff fails to plead any facts which could conceivably satisfy these requirements.

Plaintiff provides absolutely no facts regarding how the alleged statements posted on social media caused him physical injury.  Nor do such statements constitute obscene language or an obscene proposal.  "The Virginia Supreme Court held in *Barson v. Commonwealth,* 284 Va. 67, 726 S.E.2d 292 (2012), that the first disjunctive element — an 'obscene, vulgar, profane, lewd, lascivious, or indecent' communication — really means only an obscene communication."  *Motor v. Commonwealth,* 61 Va. App. 471, 478 (2013).  "Merely vulgar, profane, lewd, or lascivious communication, *Barson* held, do not violate Code § 18.2-152.7:1, thereby effectively excising those terms from the statute." *Id. (citing Barson,* 284 Va. at 74.).  The VCCA is aimed at preventing hacking and improper salacious solicitation, rising to the level of pornography, not the mere opinions expressed on social media that are the subject of the instant case. *Id.*

### E.  This Court Lacks Personal Jurisdiction Over Radack in Virginia.

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.,*

*Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  However, where the state long-arm statute is coextensive with the reach of the Due Process Clause, the "statutory inquiry merges with [the] constitutional inquiry." *Id.* at 396-97.  Here, the scope of Virginia's "long-arm statute is coextensive with Constitutional due process." *D.W. Boyd Corp v. Coon,* 86 Va. Cir. 509, 513 (Cir. Ct. 2013).

"To satisfy the constitutional due process requirement, a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 277 (4th Cir. 2009) (citations omitted).  "This test is designed to ensure that the defendant is not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Id.* (citations omitted).  Requiring minimum contacts "protects a defendant from having to defend himself in a forum where he should not have anticipated being sued." *Consulting Eng'rs,* 561 F.3d at 277. (internal quotations and citations omitted).

Courts have recognized two types of personal jurisdiction: general jurisdiction and specific jurisdiction.  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 711 (4th Cir. 2002). General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." *Id.* at 712 (citations omitted).  Specific personal jurisdiction exists when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985); *see also Indep. Printers Worldwide, Inc. v. Cole,* No. 3:15cv185, 2015 US Dist. LEXIS 103600, *6 (E.D. Va. Aug. 6, 2015) (to demonstrate specific jurisdiction, defendants must show that they "purposefully availed themselves of the Commonwealth and that their actions gave rise to this cause of action").  Whether the jurisdiction asserted is general or specific, the court's inquiry must focus on the acts

15

of the individual defendant and not on those of other defendants or third parties. *See, e.g., Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 417 (1984); *Chung v. NANA Dev. Corp.,* 783 F.2d 1124, 1127 (4th Cir. 1986).

As set forth in detail below, Plaintiff has not and cannot show that Radack is subject to either general or specific jurisdiction in Virginia. As a result, exercising jurisdiction over Radack would "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Wash,* 326 U.S. 310, 316 (1945) (internal quotations and citations omitted). Plaintiff's claims against Radack should therefore be dismissed.

### 1.    Specific Personal Jurisdiction Does Not Exist Over Radack in Virginia.

The Fourth Circuit has a three-part test to determine whether the exercise of specific jurisdiction is appropriate. The Court examines: "(1) [t]he extent to which the defendant purposefully availed [himself] of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at this State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan,* 293 F.3d at 712. (citations omitted). "[S]pecific jurisdiction requires a claim-specific analysis, as a nonresident defendant lacking continuous and systematic contacts with the forum state could not 'reasonably anticipate being haled into court' on claims unrelated to the defendant's forum state contacts, and thus haling them into court on those unrelated claims would violate their due process rights." *Gatekeeper Inc. v. Stratech Sys.,* 718 F.Supp.2d 664, 667-668 (E.D. Va. 2010).

### i.    Radack Did Not Purposefully Avail Herself of the Privilege of Conducting Activities in Virginia.

Plaintiff's Amended Complaint alleges five causes of action. The causes of action all arise from representations made in connection with, or purported breaches of, the Settlement Agreement entered into by the parties resolving the Radack Action. None of the acts giving rise to these

claims occurred in Virginia.   Plaintiff's claim for fraudulent inducement (Count I) arises out of alleged misrepresentations made by Radack in a Settlement Agreement which she did not enter into in Virginia.  Radack Decl.  ¶ 14 attached hereto as **Exhibit B**.   None of the alleged misrepresentations were made by Radack in Virginia. *Id.*   Counts II, III, IV, and V concern alleged statements that Radack made, or directed others, to make on social media of, or concerning, the Plaintiff.   Even if it could be proven that these statements were directed to Plaintiff, he was not a citizen of Virginia at the time any of the statements were made. Am. Compl. ¶ 5.   The Supreme Court has long held that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones,* 465 U.S. 783, 791, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).   Moreover, none of the alleged tweets, retweets, or likes were expressly directed at, or even mention Virginia. *See McNeil v. Biaggi Prods.,* No. 3:15cv751, 2017 U.S. Dist. LEXIS 93185, at * 17 (E.D. Va. June 16, 2017) (holding that specific jurisdiction was not established when online posts were not expressly directed at Virginia, but to an undefined audience of Internet users around the world).

Plaintiff's vague assertion that "Radack conducts her business, including advertising her services to clients and prospective clients in Virginia, by and through Twitter" is wholly inaccurate and lacks any factual basis.   Indeed, Radack has no current clients that live in Virginia. Radack Decl., ¶ 12.   It is also unclear what speculative prospective clients the Amended Complaint is referring to as Plaintiff provides no facts whatsoever to support this vague and unsubstantiated

assertion. Radack Decl., ¶¶ 9-11.[2]  Plaintiff's causes of action therefore do not involve Radack availing herself of the privilege of conducting any activities in Virginia.

### ii.      Plaintiff's Claims Do Not Arise Out of Radack's Contacts with Virginia.

Plaintiff's claims against Radack should also be dismissed because there can be no dispute that Radack does not have any minimum contacts with Virginia.  *See Consulting Eng'rs,* 561 F.3d at 278-79 (to satisfy the second prong of the specific jurisdiction test, "defendant's contacts with the forum state [must] form the basis of the suit") (citations omitted).  It is clear that the tweets, likes, and replies that form the basis of Plaintiff's claims have no connection to Virginia.  These statements manifested no intent to target Virginia readers; Virginia was not mentioned in a single tweet that forms the basis of this lawsuit; none of the tweets reference any events that took place in Virginia.  "This court does not have specific personal jurisdiction over [defendant] in this lawsuit because none of [plaintiff's] claims arise out of [defendant's] forum-related activities."). *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 552 (E.D. Va. 2004).

### 2.      Radack is Not Subject to General Jurisdiction in Virginia.

"General personal jurisdiction is 'all-purpose jurisdiction' over a defendant in the forum state, which is 'limited' in its availability . . . Absent exceptional circumstances, [a] defendant is only subject to the general jurisdiction of the forum state if it is the defendant's domicile." *FireClean LLC v. Tuohy*, No. 1:16cv294, 2016 U.S. Dist. LEXIS 109620, at *4 (E.D. Va. June 14, 2016) (citations omitted); *Kuhnen v. Remington,* No. 1:15cv766, 2016 U.S. Dist. LEXIS 84282 at * 8 (M.D.N.C. June 29, 2016) (holding that because there was no suggestion that any defendant

---

[2] Plaintiff also seeks to imply that Radack represents Edward Snowden in the pending criminal case in the United States District Court for the Eastern District of Virginia.  *See* Am. Compl. ¶ 6, ft note 2.  Plaintiff's assertion is clearly erroneous and a simple PACER search establishes that Radack does not represent Snowden in the litigation pending in Virginia. Radack Decl., ¶ 11.  Radack does not now, nor has she ever represented a client in a state or federal court in Virginia or in a regulatory proceeding in Virginia. *Id.*  Radack has never been admitted *pro hac vice* to any court in Virginia. *Id.*

was domiciled in the forum state the court lacks general personal jurisdiction over the defendants); *ADi Motorsports, Inc. v. Hubman*, No. 4:06cv00038, 2006 U.S. Dist. LEXIS 85479, at *11 (W.D. Va. Nov. 27, 2006) (*citing Corry v. CFM Majestic, Inc.,* 16 F.Supp.2d 660 *663 (E.D. Va. 1998) (holding that non-residents are subject to general personal jurisdiction when they "are essentially domiciled within the forum state."); *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). In the instant case, Plaintiff concedes that Radack does not reside in Virginia. Am. Compl. ¶ 6 ("Radack is a citizen of the District of Columbia"). This factor alone weighs strongly against the existence of general jurisdiction. *See Daimler AG v. Bauman,* 134 S.Ct. 746, 761 n. 19 (2014) (observing that only in an "exceptional case" will an individual be subject to general jurisdiction in a state other than his home state).

Plaintiff appears to assert in his Amended Complaint that this Court can exercise general jurisdiction over Radack based upon her "continuous and systematic contacts" with Virginia. Am. Compl. ¶ 8. The Supreme Court, however, has expressed doubt about whether the concept of general jurisdiction through "continuous and systematic contacts" with the forum can ever apply to non-resident individual defendants. *See Burnham v. Superior Court of Cal.,* 495 U.S. 604, 610 n.1, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990) (plurality opinion) (observing that "[i]t may be that [general jurisdiction] applies only to corporations"). As explained by the Court in *Fid. Nat'l Title Ins. Co. v. M & R Title, Inc.,* the Supreme Court has only applied general jurisdiction over foreign corporations because the "continuous and systematic" test "originally derived from the need to create a workable fiction in order to determine the physical presence of corporate entities for jurisdictional purposes, in light of the reality that those entities cannot be physically 'present' anywhere in the traditional sense. **This logic does not seem to apply to natural persons, who**

19

**physically are present only in one place at a time[.]"** *Fid. Nat'l Title Ins. Co. v. M & R Title, Inc.,* 21 F. Supp. 3d 507, 514 n. 1 (D. Md. 2014) (emphasis added).

Even assuming, *arguendo,* that an out-of-state natural person could theoretically be subjected to personal jurisdiction on the basis of "continuous and systematic contacts" with the forum state, Radack has not conducted any business in Virginia during the time frame relevant to the instant causes of action, such that the exercise of general jurisdiction would be justified.  Decl. ¶¶ 10-12.  To assert general jurisdiction, plaintiff would need to prove "by a **preponderance of the evidence** that defendant['s] contacts with Virginia are continuous, systematic, and so substantial as to justify suit against defendant[] in Virginia on any cause of action, regardless of its connection to [her] Virginia activities."  *Sportrust Assocs. Int'l, Inc. v. Sports Corp.,* 304 F.Supp.2d 789, 793 (E.D. Va. 2004) (emphasis added).  This is "a more demanding standard than is necessary for establishing specific jurisdiction."  *ALS Scan,* 293. F.3d at 712; *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.,* 301 F. Supp. 2d 545, 550 (Based on this requirement of "continuous and systematic" contact, "the standard for imposing general jurisdiction is high.").

Radack's contacts with Virginia are tenuous as best:

- Radack does not and has never lived in Virginia. Radack Decl., ¶¶ 2-3.

- Radack does not and has never owned or leased any real or personal property in Virginia.  Radack Decl., ¶ 4.

- Radack has no assets or bank accounts in Virginia. Radack Decl., ¶ 6.

- Radack has no liabilities or debts owed to anyone in Virginia. Radack Decl., ¶ 7.

- Radack has never owned or operated a business in Virginia and as a result has never had any employees in Virginia, and has never had a Virginia address, post office box, or telephone number. Radack Decl., ¶¶ 8-9.

- Radack is an attorney who has never been licensed to practice law in Virginia, nor has she ever been admitted *pro hac vice* to practice in a Court in Virginia. Radack Decl., ¶¶ 10-11.

- Radack has no current clients in Virginia. Radack Decl., ¶ 12.

Lastly, Plaintiff argues Radack has multiple clients in Virginia for whom she provides "substantial ongoing legal services." Am. Compl. ¶ 6.  In addition, Plaintiff alleges that Radack "consults and provides business advice to multiple persons in Virginia, including, without limitation, members of the Advisory Board of ExposeFacts." Am. Compl. ¶ 6.  It is unclear who Plaintiff is referring to because Plaintiff does not list one purported client of Radack who she has provided "substantial ongoing legal services" to in Virginia, or one person on the Advisory Board of ExposeFacts who Radack has purportedly provided "consults" or "business advice" to in Virginia.  Plaintiff goes on to assert that "[m]any of Radack's high-profile followers – *i.e.,* her audience to whom she tweets, promotes her causes, solicits and engages in business – live and work in Virginia," yet this blanket assertion is also unsupported by any facts. *Id.* The Twitter analytics show that only 1.3% of Radack's 36,780 actually live in Virginia. Radack Decl., ¶ 13. These social media contacts are legally insufficient to justify the exercise of general personal jurisdiction because they are not the kind of contacts that would render a defendant "essentially at home" in this state. *FireClean LLC v. Tuohy*, No. 1:16cv294, 2016 U.S. Dist. LEXIS 109620, at *4 (E.D. Va. June 14, 2016) (failing to find personal jurisdiction in Virginia in a defamation case based on comments made on blog and Facebook page, even though ninety people who "liked" the

Facebook page live in Virginia because it was "completely random, fortuitous, or attenuated" that those readers reside in Virginia).  The *FireClean* Court explains that "[t]o hold otherwise would subject anyone with an established presence on the internet to general personal jurisdiction throughout the United States, and thereby 'subvert[]' the 'traditional due process principles governing a State's jurisdiction over persons outside its borders." *Id. (citing Young v. New Haven Advocate, 3*15 F.3d 256, 263 (4th Cir. 2002)).

It is clear that Plaintiff cannot establish that Radack had "continuous and systematic" contact with Virginia as required by due process, and therefore Plaintiff's Amended Complaint should be dismissed for lack of personal jurisdiction.  *See Sportrust Assocs.,* 304 F.Supp.2d at 794 (holding that "insubstantial" contacts cannot support general jurisdiction and dismissing for lack of personal jurisdiction).

## CONCLUSION

For the reasons set forth above, Defendant Jesselyn Radack respectfully requests that the Court grant the instant Motion and dismiss with prejudice Plaintiff's Amended Complaint pursuant to Fed. R. Civil P. 12(b)(1), (b)(2), and (b)(6).

Dated this 15th day of October, 2019

    /s/  D. Margeaux Thomas
D. Margeaux Thomas (VSB #75582)
The Thomas Law Office PLC
11130 Fairfax Blvd., Suite 200-G
Fairfax, VA 22030
Telephone: 703.957.2577
Facsimile: 703.957.2578
Email: mthomas@thomaslawplc.com
*Counsel for Defendant Jesselyn A. Radack*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2019, a copy of the foregoing document was filed with the Court electronically.  Notice of this filing will be sent automatically by the Court's CM/ECF system to the following parties:

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, VA 22903
*Counsel for Plaintiff*

/s/  D. Margeaux Thomas
D. Margeaux Thomas (VSB #75582)