IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| TREVOR FITZGIBBON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-477-REP |
| | ) | |
| | ) | |
| JESSELYN A. RADACK | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MEMORANDUM IN OPPOSITION
# TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

Plaintiff, Trevor Fitzgibbon ("Plaintiff"), by counsel, pursuant to Local Civil Rule 7(F), respectfully submits this Memorandum in Opposition to the motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure [*ECF No. 24*] filed by defendant, Jesselyn Radack ("Defendant").[1]

## I.  INTRODUCTION

This is an action for fraud in the inducement, breach of contract, defamation, common law conspiracy, personal trespass and computer harassment.  The case arises out of misrepresentations made in Virginia that induced Plaintiff to settle and dismiss with prejudice a lawsuit pending in this Court. [*Fitzgibbon v. Radack*, Case 3:19-cv-247-REP (the "First Action")].  In addition to breach of a settlement agreement accepted in

---

[1]     This Opposition is supported by the Declaration of Trevor Fitzgibbon ("*Fitzgibbon Dec.*") attached hereto as *Exhibit "A"* and by the Defendant's Supplemental Answers to Plaintiff's Interrogatories (jurisdictional discovery requests – redacted) served in the First Action attached hereto as *Exhibit "B"*.

Virginia, performed in Virginia, and governed by Virginia law, Plaintiff asserts independent tort claims of defamation, common law conspiracy and personal trespass and computer harassment. [*See, e.g., ECF No. 13 ("Amended Complaint"), ¶¶ 10-47*]. Plaintiff alleges that he suffered damages in Virginia as a result of the Defendant's acts, including the loss of his viable claims stated in the First Action and presumed and actual damages for defamation as a result of the publication of Defendant's false and defamatory tweets. [*Id., ¶ 8*]; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776-777 (1984) ("[f]alse statements of fact harm both the subject of the falsehood **and** the readers of the statement … The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment a (1977).  The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous.  The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished.").

The matter is before the Court on Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ. P.  For the reasons stated below, Defendant's motion should be denied.[2]

---

[2]     Although Defendant argued by motion in the First Action that venue was improper, she did not file a motion to dismiss Plaintiff's amended complaint under Rule 12(b)(3). Rather, Defendant asserts as an affirmative defense that "[v]enue is improper in this District." [*ECF No. 23, Affirmative Defense No. 3*].  Defendant offers no evidence to show that litigation in Virginia would be burdensome, unfair or inconvenient.  Defendant has abandoned her arguments, made in a declaration filed in the First Action [*see Fitzgibbon v. Radack, Case 3:18-cv-247, ECF No. 16-2*], that she would "not be able to drive to Richmond" because of her medical condition, Muscular Sclerosis, and that "traveling to Richmond would be disruptive" to her job.

## II.  <u>STATEMENT OF JURISDICTIONAL FACTS</u>

1.     Plaintiff was born in Lynchburg, Virginia.  He provides domestic and global public relations and communication strategy for clients in Virginia and elsewhere. His clients include whistleblowers, authors, artists and activists. [*Amended Complaint, ¶ 5*; *Declaration of Trevor Fitzgibbon ("Fitzgibbon Dec."), ¶ 2*].

2.     Defendant is a high-profile business advisor and attorney to prominent whistleblowers and leakers, including Edward Snowden ("Snowden"), Thomas Drake,[3] John Kirakou ("Kiriakou"), Peter Van Buren,[4] Christopher Aaron,[5] Said Barodi

---

[3]     Drake is a former employee of the National Security Agency ("NSA"). The Government obtained an indictment against Drake for violation of the Espionage Act of 1972. *United States v. Drake*, RDB-10-0181.  Eventually, Drake pled guilty to a misdemeanor offense of exceeding authorized use of a computer, and all remaining charges were dismissed. *Id.* [*See Wiebe et al. v. National Security Agency et al.*, Case 1:11-cv-03245-RDB (Document 67 – Report and Recommendation), p. 2 of 19)].

[4]     Peter Van Buren ("Van Buren") is a retired Foreign Service Officer, who wrote a book about his year leading two reconstruction teams in Iraq.  Following publication of his book, *We Meant Well: How I Helped Lose the Battle for the Hearts and Minds of the Iraqi People*, the State Department stripped him of his security clearance and charged him with eight (8) violations State Department policy, including linking in his blog to documents on WikiLeaks; failing to clear each blog posting with his bosses; displaying a "lack of candor" during interviews with diplomatic security officers; leaking allegedly sensitive and classified information in his book; and using "bad judgement' by criticizing Secretary of State Hilary Clinton and then-presidential candidate Michelle Bachmann on his blog.  https://www.washingtonpost.com/blogs/federal-eye/post/state-dept-moves-to-fire-peter-van-buren-author-of-book-critical-of-iraq-reconstruction-effort/2012/01/31/gIQAiXNSCS_blog.html?utm_term=.692f2cc404a8; https://wemeantwell.com/blog/the-author/].   Van Buren lives or lived in Falls Church, Virginia.  [https://www.nytimes.com/2011/10/08/world/us-envoy-peter-van-buren-takes-caustic-pen-to-iraq-war.html; https://us.macmillan.com/author/petervanburen/].

[5]     Christopher Aaron is a former counter-terrorism officer for the CIA and Department of Defense drone program.  He worked at the Counterterrorism Airborne Analysis Center in Langley, Virginia.  [https://www.christopheraaronspeaking.com/; https://www.nytimes.com/2018/06/13/magazine/veterans-ptsd-drone-warrior-wounds.html].

("Barodi"),[6] and Daniel Hale ("Hale").[7]   Defendant is the Director of Whistleblower &
Source Protection (WHISPeR) at ExposeFacts, a non-profit project founded by the
Defendant to "protect the most controversial and courageous truth-tellers in the world."
[https://whisper.exposefacts.org/; *Amended Complaint, ¶ 6,  Fitzgibbon Dec., ¶¶ 2-3*].

3.      Defendant claims to be a "whistleblower" herself.  She is famous for
blowing the whistle on her colleagues at the United States Department of Justice for their
handling of emails relevant to the Government's prosecution of John Walker Lindh, an
American citizen who was captured in Afghanistan fighting for the Taliban.  The criminal
prosecution of Lindh took place in the Eastern District of Virginia.  In a complaint she
filed against the Department of Justice in 2004, Defendant alleged the following:

> 1.      This action is brought by a former government employee who both thwarted and "blew
> the whistle" on serious government misconduct in connection with the Defendant's prosecution
> of John Walker Lindh, sometimes known as the "American Taliban."  As a result of those
> activities, the Plaintiff, Jesselyn A. Radack, has been subjected to a series of illegal retaliatory
> actions by the Defendant, culminating in a willful violation of her rights under the Privacy Act,
> 5 U.S.C. § 552a.  This action is brought for money damages, as provided by that statute, and for
> corresponding declaratory and injunctive relief.

The *Lindh* case in the Eastern District of Virginia jump-started Defendant's legal career.
She wrote a book about her experiences as a "whistleblower" at the DOJ that is available
for sale in Virginia. [http://www.traitorbook.com/].

---

[6]      Barodi is a former FBI agent.  The FBI fired Barodi on February 1, 2017
after a year-long investigation that stemmed from his refusal to confirm his status as a
government employee to a United States Customs official at the Charles de Gaulle airport
in Paris, France. [https://www.propublica.org/article/the-curious-case-of-the-twice-fired-fbi-analyst].  Barodi lives in Stafford, Virginia.

[7]      *United States v. Hale*, Case 1:19-cr-00059-LO (E.D. Va.) (pending).

4.      From inception to the current day, in her pursuit of dual careers as an attorney and whistleblower/activist, Defendant has had continuous and systematic business ties to Virginia.  Defendant's cases, clients and causes are all connected to the Eastern District of Virginia: the NSA, CIA, FBI, Snowden, Kiriakou, Barodi, and Hale. [*Fitzgibbon Dec., ¶ 3*].

5.      In December 2003, Defendant commenced an action in this Court, in which she sought and obtained affirmative relief. [*In Camera Office et al. v. United States*, Case 1:03-mc-00062-TSE (E.D. Va.)].  Since 2003, Defendant has represented numerous different Virginia clients, including former CIA whistleblower, Kiriakou. [*United States v. Kiriakou*, Case 1:12-cr-00127-LMP (E.D. Va.)], former FBI analyst Barodi, and, most recently, former CIA drone operator, Hale, who was indicted by a Federal Grand Jury in Virginia in March, 2019. [*United States v. Hale*, 1:19-cr-00059-LO (E.D. Va.); *Fitzgibbon Dec., ¶ 3*].[8]

6.      On May 11, 2015, the day Judge Brinkema sentenced CIA officer Jeffrey Sterling to 42 months in prison for leaking classified information to New York Times

---

[8]      In support of her motion to dismiss, Defendant submitted a sworn declaration. [*ECF No. 25-1*].  Defendant chooses her words carefully.  In paragraph 11 of the declaration, Defendant represents:

> 11. I do not now, nor have I ever represented a client in a state or federal court in Virginia or in a regulatory proceeding in Virginia. I have never been admitted *pro hac vice* to any court in Virginia.  I do not represent Edward Snowden in the litigation pending in Virginia.

Paragraph 11 is a clever attempt at obfuscation.  Although Defendant may never have actually physically appeared "in a state or federal court in Virginia", she has most certainly represented numerous persons in criminal and civil matters in Virginia.  Indeed, Defendant openly advertises her representation of clients on Twitter. *See infra*.

reporter, James Risen [Case 1:10-cr-00485-LMB-1 (Documents 472-473) (E.D. Va.)], the Defendant was physically present and available for comment in front of the United States Federal Courthouse in Alexandria. [*See, e.g.,* http://www.accuracy.org/release/cia-whistleblower-sentencing-today/ ("The sentencing … is set for 2 pm.   Immediately afterward, former CIA official Ray McGovern and former Justice Department official **Jesselyn Radack** will be available for comment in front of the courthouse.")].[9]

7.      Defendant conducts her business, including advertising her services to clients and prospective clients in Virginia, by and through Twitter.   Radack operates Twitter account, **@JesselynRadack**.   She has over 36,500 followers.   Prior to this action being filed, Defendant habitually disclosed the names of her clients on Twitter, *e.g.*:



un~~RADACK~~ted
@JesselynRadack

Replying to @FreeThought84 @CassandraRules and 12 others

Yup. I represent pro bono @Snowden, @Thomas_Drake1, @JohnKiriakou, @WeMeantWell & dozens of #whistleblowers. That totally makes me a "narcissist."

7:03 PM · Jul 11, 2018

---

[9]      In her sworn Supplemental Interrogatory Answers filed in the First Action, Defendant denied that she was ever physically present in Virginia between April 13, 2015 and April 13, 2018:

> 6.  Identify the number of times Radack and/or her agents, representatives and/or employees have been physically present in Virginia between April 13, 2015 and the present, and, for each occasion, describe in detail (a) the reason for being in Virginia, (b) the nature of any business activity conducted in Virginia, and (c) the location and duration of each visit.
>
> **Response to request as modified by Court order:** Zero times.

[*Exhibit "B"*, Supplemental Answer to Interrogatory No. 6].

 **un~~RADACK~~ted**
@JesselynRadack

⌄

Our client did his job so well that the #FBI fired him...twice.



The Curious Case of the Twice-Fired FBI Analyst — ProPublica
propublica.org

9:09 AM · Apr 25, 2018

 **unR̶A̶D̶A̶C̶K̶ted**
@JesselynRadack

Despite distance f/ the battlefield, #drone airmen experience "moral injury" — featuring my brave client, Chris Aaron.



The Wounds of the Drone Warrior
nytimes.com

10:12 AM · Jun 13, 2018

 **unR̶A̶D̶A̶C̶Kted**
@JesselynRadack

"The allegations against #Hale are allegations of whistleblowing," said his atty, Jesselyn Radack. "@theintercept reporting on US gov's secretive #drone assassinations sheds much needed light on a lethal program in dire need of more oversight."



Former intelligence analyst charged with leaking drone details to news outlet
Daniel Hale faces five charges related to the disclosures to a reporter.
🔗 washingtonpost.com

12:32 PM · May 9, 2019 · Twitter for iPhone



8.     In spite of her unequivocal assertions on Twitter that she represents Hale and is "currently fighting" the "Espionage Act case against Hale" in the "EDVA", Defendant has submitted a sworn declaration to the Court in which she represents that "I do not now, nor have I ever represented a client in a state or federal court in Virginia". [*ECF No. 25-1, ¶ 11*].  In 2013, the United States of America filed a criminal complaint against Snowden in the United States District Court for the Eastern District of Virginia. [*United States v. Snowden*, Case 1:13-cr-265 (CMH) (E.D. Va.) (06/14/2013) (Under Seal)].     The   matter   is   pending.     [https://www.washingtonpost.com/world/national-

security/us-charges-snowden-with-espionage/2013/06/21/507497d8-dab1-11e2-a016-92547bf094cc_story.html].   Although Defendant is unequivocal on Twitter that she represents Snowden – period, with no caveats – her declaration filed in this action conveniently states that "I do not represent Edward Snowden *in the litigation pending in Virginia*". [*ECF No. 25-1, ¶ 11* (Emphasis added)].

9.     In the First Action, Defendant admitted that two (2) of her clients, Kiriakou and Barodi, lived in Virginia.  Jurisdictional discovery showed that Defendant transacted substantial and persistent business in Virginia with these clients.  In the course of doing sustained business with clients in Virginia between 2016 and 2018, Defendant sent or received one-hundred and one (101) emails to clients relating to business, either actual (ongoing or completed) or prospective, and engaged in multiple telephone calls over an extended period. [*Exhibit "B"*, *Supplemental Answer to Interrogatory No. 5*].

10.     Many of Defendant's high-profile followers on Twitter – *i.e.*, her audience to whom she tweets, promotes her causes, solicits and engages in business – live and work in Virginia. [*See, e.g. Caroline Orr,* **@RVAwonk**; *Amended Complaint, ¶ 6*].  The Defendant regularly and systematically uses social media (Twitter) in connection with her business.  On average, she tweets and retweets to her followers approximately five (5) times per day.  Defendant's Virginia clients, colleagues and/or followers include the following persons:

- Kiriakou – @JohnKiriakou
- Barodi – @barodi_said
- Senator Mark S. Warner – @MarkWarner
- Andrew M. Cockburn – @andrewmcockburn
- Barbara Ehrenreich – @B_Ehrenreich
- Matthew P. Hoh – @MatthewPHoh
- Josh Gerstein – @joshgerstein
- Adam Parkhomnko - @AdamParkhomenko

[*Fitzgibbon Dec., ¶ 3*; https://twitter.com/JesselynRadack/followers].[10]

11.     Each of the Defendant's Virginia Twitter followers is a witness or potential witness in this case.  By tweeting and retweeting the defamatory statements at issue, Defendant knew (and knows) that she is publishing statements to her followers in Virginia. [*Fitzgibbon Dec., ¶ 3*].

12.     In addition to the business discussed in the preceding paragraphs, Defendant has also appeared on television and radio in Virginia many times to advertise and promote her business, *e.g.*:

https://www.youtube.com/watch?v=isiBjM5W96M (December 12, 2014)
(Joining *Larry King Live* from Arlington, Virginia);

https://archive.org/details/TalkNationRadioTheWarOnWhistleblowersWithThomasDrakeAndJesselyn;

http://davidswanson.org/talk-nation-radio-the-war-on-whistleblowers-with-thomas-drake-and-jesselyn-radack/.

Talk Nation Radio is a 29-minute show, with a new episode released every Wednesday at TalkNationRadio.org and available free to any station.  The host, David Swanson, interviews guests on a wide range of topics but with a particular focus on peace, justice, and political action.  Talk Nation Radio airs on WTJU, Charlottesville, Virginia, WJVA-LPFM 106.5. Portsmouth, VA, and other stations throughout the country.   David Swanson   has   long   lived   and   worked   in   Charlottesville,   Virginia. [http://davidswanson.org/about/; *Fitzgibbon Dec., ¶ 3*].

13.     On April 13, 2018, Plaintiff commenced the First Action.  In a second amended complaint, he alleged claims of malicious prosecution, defamation, insulting

---

[10]     In her declaration, Defendant admits that 478 of her Twitter followers live in Virginia. [*ECF No. 25-1, ¶ 13 ("1.3% of my 36,780 followers live in Virginia")*].

words, abuse of process, and conspiracy.   He sought money damages in the sum of $10,350,000.00 as a result of Defendant's malicious prosecution, defamation and wrongdoing. [*Amended Complaint, ¶ 10; Fitzgibbon Dec., ¶ 2*].    In March and April 2019, after the District Court in the First Action entered an Order to Show Cause [*Fitzgibbon v. Radack*, Case 3:18-cv-247 (Document 87)] why Defendant should not be held in contempt for violating a restraining order [*Id.*, (Document 41)], Defendant made multiple material misrepresentations to Plaintiff for the purpose of inducing Plaintiff to settle his claims against Defendant and her employer, the Institute for Public Accuracy ("IPA"),[11] and release Defendant and IPA from liability.   These false representations were made in Virginia. [*Amended Complaint, ¶¶ 8, 11; Fitzgibbon Dec., ¶ 2*].

14.    On April 9, 2019, Plaintiff and Defendant signed a settlement agreement. The settlement agreement was accepted in Virginia; performed in Virginia by the delivery of the settlement checks; and is governed by Virginia law. [*Amended Complaint, ¶¶ 8, 12; Fitzgibbon Dec., ¶ 2*].

### III.   THE STANDARD GOVERNING FED. R. CIV. P. 12(b)(2)

In 2016, the Fourth Circuit clarified the appropriate evidentiary standard on a Fed. R. Civ. P. 12(b) (2) motion to dismiss for lack of personal jurisdiction:

> "The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court.  For example, when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge."

---

[11]    Fitzgibbon's claims against IPA were the subject of a separate action. [Case 3:19-cv-102-REP (E.D. Va.)].

13

*Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *id. Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009) (where the Court considers a motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction "on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." (citation omitted).   Under such circumstances, the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *Sneha Media & Entm't, LLC v. Associated Broad. Co. P LTD*, 911 F.3d 192, 196 (4th Cir. 2018); *New Wellington Fin. Corp. v. Flagship Resort Dev. Co.*, 416 F.3d 290, 294 (4th Cir. 2005) (citations and quotations omitted).   "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, 2010 WL 1225620, at * 1 (E.D. Va. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).

## IV.  **DISCUSSION**

Under the foregoing principles, Plaintiff must make a prima facie showing that the Court has personal jurisdiction over the Defendant.  Construing Plaintiff's allegations in the light most favorably to him, there is no question that Plaintiff has made such a showing as to both general and specific personal jurisdiction.

## A.    **Framework for Personal Jurisdiction Analysis**

In order for a Court to exercise personal jurisdiction over a defendant, the exercise of that jurisdiction must both be authorized by state law and comport with the Due

Process Clause of the Fourteenth Amendment.  The exercise of jurisdiction in Virginia is governed by the Commonwealth's long-arm statute (Va. Code § 8.01-328.1), which has been held to extend personal jurisdiction to the full extent permitted by Due Process. *Roche v. Worldwide Media, Inc.*, 90 F.Supp.2d 714, 716 (E.D. Va. 2000).   Since Virginia's long-arm statute is co-extensive with the strictures of Due Process, Courts collapse the two-part analysis into one inquiry. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) ("Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'") (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996)); *see Reynolds Metals Co. v. FMALI. Inc.*, 862 F. Supp. 1496, 1498 (E.D. Va. 1994) (citing *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1981)).

The federal constitutional predicate for the exercise of personal jurisdiction is the familiar requirement that "a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

## B.    <u>Waiver of Personal Jurisdiction; Estoppel</u>

The requirement of personal jurisdiction can be waived by appearance or failure to make a timely objection. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-705 (1982) ("Because the requirement of personal jurisdiction

represents first of all an individual right, it can, like other such rights, be waived … or for various reasons a defendant may be estopped from raising the issue … The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not").

On October 23, 2019, Defendant filed counterclaims.  Defendant was under no compulsion to do so. [*See, e.g., ECF No. 15 ("it is hereby ORDERED that the defendant's MOTION FOR EXTENSION OF TIME (ECF No. 18) is granted and the defendant shall file, by October 29, 2019, her Answer to the AMENDED COMPLAINT (ECF No. 13).")*].

By filing the counterclaims,[12] Defendant waived her objection under Rule 12(b)(2) or, at a minimum, Defendant should be estopped to challenge the jurisdiction of the Court. *See Roden v. Diah*, 2008 WL 5334309, at * 7 (W.D. Va. 2008) (citing *Gilpin v. Joyce*, 257 Va. 579, 581, 515 S.E.2d 124 (1999) (defendant who filed grounds of defense going to the merits of the plaintiff's case, along with a counterclaim, made a general appearance in the trial court proceedings, and such general appearance operated as a waiver of process, "equivalent to personal service, and confers jurisdiction of the person on the court.")).

## C.     Due Process Standard

The requirements of the Due Process clause can be met through establishing either specific or general jurisdiction.  Specific jurisdiction exists where the controversy at issue arises out of sufficient contacts with the state to make the exercise of jurisdiction reasonable. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-415

---

[12]      In addition to the counterclaims, Defendant filed a motion to seal in which she sought affirmative relief from the Court. [*ECF No. 8*].

(1984).  Alternatively, general jurisdiction can exist, even where a claim does not arise

from a defendant's interactions with the state, where she has sufficient continuous and

systematic contacts with the state to satisfy Due Process.  *Id.*  General jurisdiction exists

when a defendant's "affiliations with the State are so 'continuous and systematic' as to

render [her] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct.

746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

915, 919 (2011)).

Defendant is subject to both general and specific jurisdiction.

1. ***General Jurisdiction***

Defendant's contacts with Virginia are extensive, continuous and systematic:

- She has been a party to litigation in this Court.

- She has represented numerous whistleblowers and leakers in Virginia over a career that has spanned more than fifteen (15) years.  Among her clients with pending and/or resolved cases in the Eastern District of Virginia are Edward Snowden, John Kiriakou, and Daniel Hale – all extremely high profile defendants.

- During the pendency of the First Action, Defendant represented two (2) Virginia clients, Kiriakou and Barodi.  She continuously communicated with these clients and provided them legal advice over the course of approximately three (3) years.

- She has appeared on television and radio in Virginia, where she has transacted her business as an advocate for whistleblowers and activists.

- Between 2017 and the present, Defendant has relentlessly tweeted false and defamatory statements about the Plaintiff to her followers, including clients and others who she knows live in Virginia.

The alarming frequency and obvious comfort with which Defendant launches her

vile tweets into the stream of commerce, knowing they will be read in Virginia, coupled

with her continuous in-state business contacts, including her representation of multiple

clients in the "EDVA", demonstrates that Defendant is "essentially at home" in Virginia. She is subject to the Court's general jurisdiction.

### 2.    <u>Specific Jurisdiction Analysis</u>

In determining whether specific jurisdiction exists, a Court looks to: (1) the extent to which the defendant has purposely availed herself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be Constitutionally "reasonable." *New Wellington*, 328 F.2d at 618; *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citing *Helicopteros Nacionales de Columbia, S.A.*, 466 U .S. at 414 & fn. 8-9 (1984)).  With respect to the first factor, "no clear formula [exists] for determining what constitutes 'purposeful availment.'" *Reynolds Foil, Inc.*, 2010 WL 1225620, at *2.  The Court, however, may consider whether the defendant maintains offices or agents in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the defendant made in-person contact with a resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the relevant transactions. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (internal citations omitted).  The second prong of the test for specific jurisdiction "requires that the defendant's contacts with the forum state form the basis of the suit. *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414.  The third prong of the specific jurisdiction test permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a

defendant has purposefully availed itself of the privilege of doing business there. Specifically, the court may consider: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and, (5) the interests of the states in furthering substantive social policies. *Burger King*, 471 U.S. at 477.

Here, the Defendant's contacts with Virginia are the basis for the suit. She made numerous misrepresentations in Virginia that induced Plaintiff to settle the First Action. The product of Defendant's fraud – the settlement agreement – was accepted in Virginia; performed in Virginia by the delivery of settlement funds and dismissal of the First Action with prejudice; and, importantly, the contract is governed by Virginia law. Defendant defamed Plaintiff by publishing false and defamatory statements that Defendant knew would be viewed by her legion of Twitter followers, including 478 specific persons who live in Virginia. The Supreme Court of the United States has long held that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones*, 465 U.S. 783, 791 (1984) ("Jurisdiction over petitioners is therefore proper in California based on the 'effects' of the Florida conduct in California."). Under the circumstances, Defendant reasonably should have expected to be haled into court in Virginia. *See Gubarev v. BuzzFeed*, 253 F.Supp.3d 1149, 1159 (S.D. Fla. 2017) ("When Defendants published their unverified Dossier via their website and mobile application, Defendants knew it would be viewed around the world, and given the international scope of its contents, should have

anticipated that the effects of the publication might be felt in different fora, including the fora where Plaintiffs are located.  Accordingly, Defendants cannot claim surprise at being haled into court in the Southern District of Florida."); *compare id. Blue Ridge Bank, Inc. v. Veribanc*, 755 F.2d 371, 374 (4th Cir. 1985) (the defendant "obviously knew that Dorfman was going to write an article that included the allegedly libelous information about Blue Ridge and that the article could find its way into the Commonwealth of Virginia.  By requiring Dorfman to reveal his source of financial information Veribanc obviously expected to receive additional orders from customers who read the information in the article.  Because of this expectation Veribanc could reasonably expect to be hailed into court, on an allegation of false information supplied to Dorfman by Veribanc, in any forum in which Dorfman's article appeared … Veribanc's fifty-seven contacts with its subscribers in Virginia add strength to the exercise of personal jurisdiction over Veribanc").

Litigating this case in Virginia will not impose any burden on Defendant.  She has conducted substantial business in Virginia over many years.  She signed a settlement agreement that she performed in Virginia.  She agreed to be governed by Virginia law in the event of a breach.  And, Virginia is certainly not a foreign forum to her.  As Defendant enthusiastically confirmed on Twitter, she is "currently fighting" an Espionage Act case – the "Wikileaks Warmup" – in this very Court.  It is beyond dispute that the Commonwealth of Virginia has a significant interest in exercising jurisdiction over those who commit torts (defamation, conspiracy and computer harassment) within its territory. *Compare, e.g., Keeton,* 465 U.S. at 776 ("it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State … New

Hampshire may rightly employ its libel laws to discourage the deception of its citizens."). Lastly, litigating the case in Virginia will help prevent delay for Plaintiff and ensure that the dispute is resolved in a more efficient way.   The exercise of specific personal jurisdiction over Defendant is constitutionally reasonable.

## **CONCLUSION AND REQUEST FOR RELIEF**

For the foregoing reasons, Plaintiff respectfully requests the Court to deny the Defendant's motion to dismiss for lack of personal jurisdiction.


DATED:          November 5, 2019



TREVOR FITZGIBBON



By:____*/s/ Steven S. Biss*_____
            Steven S. Biss (VSB # 32972)
            300 West Main Street, Suite 102
            Charlottesville, Virginia 22903
            Telephone:     (804) 501-8272
            Facsimile:     (202) 318-4098
            Email:          **stevenbiss@earthlink.net**

            *Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2019 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By:    */s/Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:    (804) 501-8272
      Facsimile:    (202) 318-4098
      Email:        **stevenbiss@earthlink.net**

      *Counsel for the Plaintiff*