IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| TREVOR FITZGIBBON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-477-REP |
| | ) | |
| | ) | |
| JESSELYN A. RADACK | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MEMORANDUM IN OPPOSITION
# TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Plaintiff, Trevor Fitzgibbon ("Plaintiff"), by counsel, pursuant to Local Civil Rule 7(F), respectfully submits this Memorandum in Opposition to the motion to dismiss pursuant to Rule 12(b)(6) [*ECF No. 26*] filed by defendant, Jesselyn Radack ("Defendant").

## I.  INTRODUCTION

This is an action for fraud in the inducement, breach of contract, defamation, common law conspiracy, personal trespass and computer harassment.  In Count I of his amended complaint, Plaintiff alleges that the Defendant fraudulently induced him to settle and dismiss with prejudice a lawsuit pending in this Court, *Fitzgibbon v. Radack*, Case 3:19-cv-247-REP (the "First Action"). [*ECF No. 13 ("Amended Complaint"), ¶¶ 10-16*].  In Count II, Plaintiff states a claim for breach of contract. [*Id., ¶¶ 17-25*].  In Count III for defamation, Plaintiff alleges that the Defendant and co-conspirators

published false and defamatory statements causing Plaintiff presumed and actual damages. [*Amended Complaint, ¶¶ 26-36*].   Count IV states a claim of common law conspiracy. [*Id., ¶¶ 27-43*].   Finally, in Count V, Plaintiff alleges claims for personal tress by computer and computer harassment under Virginia law. [*Id., ¶¶ 44-47*].

The matter is now before the Court on Defendant's motion to dismiss pursuant to Fed. R. Civ P. 12(b)(6).   The Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 1367(a).   For the reasons stated below, Defendant's motion should be denied.

## II.   STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).   In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. COUNT I – Fraud in the Inducement

The elements of actual fraud are: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Spence v. Griffin*, 236 Va. 21, 28, 372 S.E.2d 595 (1988) (cited in *Nationwide Mut. Ins. Co. v. Hargraves*, 242 Va. 88, 92, 405 S.E.2d 848 (1991) ("The injured party must have been damaged as a result of his reliance on the misrepresentation which may take the form of silence or the failure to speak.")). In fraud cases, "a fact is material when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred." *Spence*, 236 Va. at 28 fn\*, 372 S.E.2d at 598 (quoting *Packard Norfolk v. Miller*, 198 Va. 577, 563, 95 S.E.2d 207 (1956)) (further citations omitted)).

It is well-established in Virginia that a "false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract by a court of equity" ***and*** fraud in the inducement of a contract "is also ground for an action for damages in a court of law." *George Robberrecht Seafood, Inc. v. Maitland Brothers Company, Inc.* 220 Va. 109, 111-

112, 255 S.E.2d 682 (1979) (citations and quotations omitted); *Nationwide Mut. Ins. Co. v. Martin*, 210 Va. 354, 171 S.E.2d 239 (1960) ("There is no instrument so solemn, there is no judgment or decree so binding, but that, if fraud in its procurement be alleged and proved, it ceases to protect the wrong doer or to obstruct the injured in the assertion of their rights") (quoting *Norfolk & W.R. Co. v. Mills*, 91 Va. 613, 641, 22 S.E. 556 (1895) (Keith, J., concurring); *see also Boykins v. Hermitage Realty*, 234 Va. 26, 29-30, 360 S.E.2d 177 (1987) ("[A]n action in tort for deceit and fraud may sometimes be predicated on promises which are made with a present intention not to perform them … [T]he gist of fraud in such case is not the breach of the agreement to perform, but the fraudulent intent … [T]he fraudulent purposes of the promisor and his false representation of an existing intention to perform … is the misrepresentation of a fact … [T]he state of the promisor's mind at the time he makes the promise is a fact, and … if he represents his state of mind … as being one thing when in fact his purpose is just the contrary, he misrepresents a then existing fact.") (quotation and citation omitted); *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 677, 325 S.E.2d 91 (1985) ("the promisor's intention – his state of mind – is a matter of fact.  When he makes the promise, intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud").[1]

"[R]eliance is a fact-intensive inquiry that is usually inappropriate for a motion to dismiss." *Carlucci v. Han*, 907 F.Supp.2d 709, 741 (E.D. Va. 2012); *Smith v. Flagler Bank, F.S.B.*, 2015 WL 1221270, at * 5 (E.D. Va. 2015) ("Although Plaintiff does not

---

[1]     Here, unlike the case in *Metrocall* and *Muryama*, Plaintiff does not seek to rescind or vitiate the settlement agreement.  Rather, Plaintiff sues for money damages as a result of Defendant's fraud.

plead any prudent investigation on his part, at this stage in the litigation the Court cannot say as a matter of law that Plaintiff acted unreasonably."); *Yankah v. Mack*, 2015 WL 539586, at * 3 (E.D. Va. 2015) ("Yankah cannot call Mack's reliance on her lies unreasonable just because Mack could have figured out that she was lying if he had run her credit report. Moreover, reasonable reliance is a question of fact, and considered 'in light of the totality of the circumstances.'") (quotation omitted); *Cook v. CitiFinancial, Inc.*, 2014 WL 2040070, at * 4 (W.D. Va. 2014) ("The issue of whether a party reasonably relied on representations is ordinarily a question for the trier of fact to determine. *See Bank of Montreal,* 193 F.3d at 834 (noting that the reasonableness of a party's reliance is a 'question[] to be decided by the jury in light of, *inter alia,* the nature of the parties and the transaction, the representations, omissions, and distractions presented by the defendant, and the duties of investigation assumed by the plaintiff'); *Miller v. Premier Corp.,* 608 F.2d 973, 982 (4th Cir. 1979) (emphasizing that the 'issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the trier of fact'")); *see id. Steffan v. Freeman Assoc., Inc.*, 2002 WL 32073957, at * 7 (Norfolk Cir. 2002) (the "the resulting knowledge that each buyer gained from his inspection and the reasonableness of each buyer's reliance on the [defendant's] brochures are disputed questions of fact" – motion for summary judgment denied); *Messer v. Re/Max Properties, Inc.*, 1985 WL 306771, at * 1 (Fairfax Cir. 1985) ("A vendor who intentionally misrepresents a material fact to a buyer upon which the buyer reasonably relies to his detriment is liable to that buyer … Count I states a cause of action against the agent for fraud. The issues of reasonable reliance, duty to investigate the facts, and

'dealer's talk,' and other defenses are all matters for trial."); *Fisher v. Frank*, 1984 WL 276310, at * 1 (Warren County 1984) (reliance "cannot be [determined as] a matter of law given the background set forth in the pleadings but is a question of fact to be determined by a fact finder.").

In *Beatley v. Ayers*, the plaintiff sued three former business colleagues for breach of contract, conspiracy to breach a contract, fraud in the inducement of a settlement agreement, and conspiracy to commit fraud.   District Court found that one defendant committed fraud in the inducement – that is, he falsely represented that he intended to perform the settlement, when, in fact, he "intended to breach from the start." 2019 WL 2606840, at * 6 (E.D. Va. 2019).  The Court found as follows:

> "Clear and convincing evidence shows that Ayers never intended to pay money to Beatley.  Just a few days after the mediation, Ayers wrote to Woodfin Jr. and said that he had a plan; the plan was to make sure that Beatley got no money.  For almost a year, Ayers assiduously lobbied Woodfin Jr. to throw roadblocks to Beatley's recovery.  Ayers misstated the terms of the agreement to the Bank and Habenicht.  Ayers believed that if Woodfin Jr. put enough pressure on Beatley, no money would change hands and Ayers could keep his portion of the $134,000.

> By the same token, Ayers had no intention of relieving Beatley of the obligation to pay $157,195 to the Bank.  His 'best efforts' to get Beatley off the loan consisted of a brief letter and a voice message, neither of which the Bank responded to.  Ayers' efforts to avoid paying the $134,000 demonstrate the gymnastics he will undertake to accomplish something that benefits him. Contrasting those efforts with his efforts to get Beatley off the note, it grows clear that Ayers had no intent to perform this obligation under the settlement agreement.

> Nor did he intend to pay the note when due.  Ayers falsely claimed at trial that he did not know that Woodfin had posted collateral to cover the note.  But in an earlier letter to the Bank, Ayers observed that Woodfin had used his assets to collateralize the note.  Ayers simply waited for the Bank to call the note and apply Woodfin Sr.'s assets to its payments, leaving Beatley to settle up with Woodfin Sr.'s estate.

A review of the totality of the circumstances shows that Ayers had no intention of performing any obligations under the settlement agreement. He is guilty of fraud."

*Id.* at * 8-9.

In this case, as in *Ayers*, Defendant misrepresented and concealed her present intention to comply with the settlement agreement. [*Amended Complaint, ¶ 14 ("Radack misrepresented and concealed the fact that she planned and intended to continue defaming Fitzgibbon on Twitter. Radack acted under false and deceitful pretenses to obtain a dismissal of Fitzgibbon's viable claims stated in the Radack Action.")*]. Plaintiff alleges that the Defendant's fraud induced him to dismiss the First Action with prejudice. Plaintiff further asserts that he reasonably and justifiably relied on Defendant's representations by dismissing his action on May 2, 2019. [*Amended Complaint. ¶ 12*]. As in *Ayers*, the Defendant's true colors only became apparent ***after*** the Plaintiff settled. As alleged in Plaintiff's amended complaint, Defendant and her confederates continued the defamation campaign on May 3, 2019 with the following tweets:

 **un~~RADACK~~ted** @JesselynRadack · 12h

Since April 2018, I have been involved in litigation with Trevor Fitzgibbon. We have amicably resolved our differences. As part of the settlement, I retract and withdraw every allegation and statement I have ever made against Trevor Fitzgibbon.

💬 14        🔁 7        ♡ 26        ⬆️

 **Raymond Johansen**
@RayJoha2

Replying to @JesselynRadack

Tweet is part of the deal to  end years of stalking, smear campaigns, bar complaints, lawsuits, and threats against her clients.

12:14 PM · May 3, 2019 · TweetDeck

[*Amended Complaint, ¶ 27*].

The "duty not to commit fraud" is a common-law duty that exists independent of any contract. Indeed, "Virginia law recognizes the separate tort of fraud, even where the parties have agreed to a contract." *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 446-447 (4th Cir. 1990).

Defendant breached common law duties when she fraudulently induced Plaintiff to enter into the settlement agreement and dismiss the First Action. *Compare Elliott v. Shore Stop, Inc.*, 238 Va. 237, 245, 384 S.E.2d 752 (1989) ("Ordinarily, in an action based on fraud, the moving party must aver the misrepresentation of present or pre-existing facts; the action usually may not be predicated on unfulfilled promises or statements about future events. However, there is a recognized exception to that rule. An action in tort for fraud and deceit may be predicated in some cases on promises made with a present intention not to perform them; the gist of the fraud in such a situation is the fraudulent intent. This is such a case. The plaintiff has alleged that Myers promised to permit the plaintiff to retain her job if she took the test, a promise that he did not intend to perform at the time it was made. Thus, contrary to the trial court's view, Myers' promise was a misrepresentation of a present fact, and if made to induce the employee to act to her detriment, is actionable as an actual fraud.") (citations omitted).

The Court should deny Defendant's motion to dismiss Count I for fraud in the inducement.

### B. COUNT II – Breach of Contract

Defendant agrees that Count II of Plaintiff's amended complaint states a claim upon which relief can be granted. Defendant does not move to dismiss Count II.

C.    **COUNT III – Defamation**

> "A slander is preserved in no fixed or permanent form.  It ordinarily soon fades
> out and is forgotten like the sound that carries it.  But one who publishes a libel in
> a newspaper or pamphlet which circulates among many people, or even in a
> private letter, thereby places it in permanent form where it will be more likely to
> continue in existence and to be read by many people, and where he causes it to be
> published in a newspaper or magazine he thereby evidences his intention that the
> readers shall read it, so that the natural and probable effect of publishing a libel is
> far more permanent, extensive and injurious to the victim than the mere speaking
> of the words it contains to one or more persons."

*James v. Powell*, 154 Va. 96, 113-114, 152 S.E 539 (1930) (quoting *Maytag v. Cummins*,

260 F. 74, 80 (8th Cir. 1919)).

From the beginning of recorded time, the law has faithfully protected a person's

"absolute" right to an unimpaired reputation.  In *Fuller v. Edwards*, the Virginia Supreme

Court recognized that "[o]ne's right to an unimpaired limb and to an unimpaired

reputation are, in each instance, absolute and has been since common law governed

England.  Indeed, an impaired reputation is at times more disastrous than a broken leg."

180 Va. 191, 198, 22 S.E.2d 26 (1942) (cited in *Gazette, Inc. v. Harris*, 229 Va. 1, 7, 325

S.E.2d 713 (1985) ("In Virginia, as in other states, the law of defamation historically has

protected a basic interest.  The individual's right to personal security includ[ing] his

uninterrupted entitlement to enjoyment of his reputation.")); *id. Milkovich v. Lorain

Journal Co.*, 497 U.S. 1, 12 (1990) ("Good name in man and woman, dear my lord, Is the

immediate jewel of their souls.  Who steals my purse steals trash; 'Tis something,

nothing; 'Twas mine, `tis his, and has been slave to thousands; But he that filches from

me my good name Robs me of that which not enriches him, And makes me poor

indeed.") (quoting WILLIAM SHAKESPEARE, OTHELLO, act 3 sc. 3)).  Importantly,

in *Rosenblatt v. Baer*, the United States Supreme Court expressly affirmed that:

"'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.' The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty … The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored … Surely if the 1950's taught us anything, they taught us that the poisonous atmosphere of the easy lie can infect and degrade a whole society."

383 U.S. 75, 92-93 (1966).

Defendant makes no attempt to challenge Count III under Rule 12(B)(6).

## D.      COUNT IV – Common Law Conspiracy

A common law conspiracy consists of an agreement between two or more persons to accomplish, by some concerted action, an unlawful purpose or a lawful purpose by unlawful means. *Harrell v. Colonial Holdings, Inc.*, 923 F.Supp.2d 813, 825 (E.D. Va. 2013) ("The 'unlawful act' element requires that at least one member of the conspiracy commit an 'underlying tort.' … This can include the inducement of a breach of contract or defamation, as alleged in this case.") (citations omitted).

It is well-established that acts of defamation may form the predicate of a claim of civil conspiracy. *Ransome v. O'Bier*, 2017 WL 1437100, at * 4 (E.D. Va. 2017) ("In addition to alleging facts supporting a claim for defamation, Ransome also alleges that O'Bier, Sterrett, and Berman conspired to defame him, and that they used personal email accounts to coordinate and communicate their defamatory publications. The Court therefore denies the motion to dismiss Ransome's Count II common-law conspiracy claim as it relates to defamation."); *Massey Energy Co. v. United Mine Workers*, 2005 WL 3476771, at * 1 (Fairfax Cir. 2005) ("Plaintiffs allege that Defendants conspired to defame and defamed Plaintiffs with the purpose of injuring them in their trade, business,

and profession."); *Cobbs v. Commonwealth*, 2001 WL 322728, at * 4-5 (Chesterfield Cir. 2001) (overruling demurrer to conspiracy to defame count); *Carolinas Cement Co. v. Riverton Inv. Co.*, 2000 WL 33340623, at * 6 (Frederick Cir. 2000) ("the Demurrer is overruled to the extent that the conspiracy is based on the defamation of the plaintiff").

Here, Plaintiff identifies the purpose of the conspiracy, the overt acts of defamation committed in furtherance of the joint scheme, who participated in the conspiracy, when and where it occurred – over the airwaves via Twitter. Plaintiff has adequately alleged a claim of common law conspiracy. *Harrell*, 923 F.Supp.2d at 826 ("Even if the heightened standards of Rule 9(b) applied, the Court would find the allegations here to be sufficient. Construed in Defendants' favor, the Counterclaim alleges that Plaintiffs purchased the Strawberry Hill Races Mark on May 24, 2012, and within one week formed an agreement to tortiously injure Defendants").

## E.     COUNT V – Personal Trespass and Computer Harassment

Section 18.2-152.12(A) of the Virginia Code creates a private right of action for injury sustained as a result of a violation of the Virginia Computer Crimes Act:

> "Any person whose property or person is injured by reason of a violation of any provision of this article or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent may sue therefor and recover for any damages sustained and the costs of suit. Without limiting the generality of the term, 'damages' shall include loss of profits.[2]

Section 18.2-152.7 of the Virginia Code states that a person is "guilty of the crime of personal trespass by computer when [s]he uses a computer or computer network to cause

---

[2]     Statutory injury under the Virginia Computer Crimes Act includes consequential damages. *Hately v. Watts*, 917 F.3d 770, 781 (4th Cir. 2019) ("Here, Hately pleaded sufficient facts to make plausible his claim that he suffered injury under the Virginia Computer Crimes Act. Accordingly, the district court erred by dismissing Hately's Virginia Computer Crimes Act claims").

physical injury to an individual." Under § 18.2-152.7:1 of the Code, a person is guilt of "[h]arassment by computer" if she, "with the intent to coerce, intimidate, or harass any person, shall use a computer or computer network to communicate obscene, vulgar, profane, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act".

In his amended complaint, Plaintiff alleges that the Defendant used computers or a computer network to cause physical injury to Plaintiff. In support of these allegations, Plaintiff identifies the tweets that were published by Defendant and her co-conspirators via Twitter, *i.e.*, over a computer network. Plaintiff claims that he suffered physical injury and other damages as a direct result of Defendant's use of her computers or computer network. [*Amended Complaint, ¶ 47*]. Plaintiff <u>also</u> alleges that Defendant "with the intent to coerce, intimidate, or harass Fitzgibbon, has also used computers or a computer network to communicate vulgar, profane, and indecent language and to threaten illegal or immoral acts."

Viewing the facts in the light most favorable to Plaintiff, he has sufficiently alleged statutory claims of personal trespass by computer and harassment by computer.

### **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss pursuant to Rule 12(b)(6) should be denied.


DATED:        November 6, 2019


Signature of Counsel on Next Page

TREVOR FITZGIBBON


By:___*/s/ Steven S. Biss*_____
          Steven S. Biss (VSB # 32972)
          300 West Main Street, Suite 102
          Charlottesville, Virginia 22903
          Telephone:     (804) 501-8272
          Facsimile:      (202) 318-4098
          Email:          **stevenbiss@earthlink.net**

          *Counsel for the Plaintiff*


## **CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2019 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.


By:___*/s/Steven S. Biss*_____
          Steven S. Biss (VSB # 32972)
          300 West Main Street, Suite 102
          Charlottesville, Virginia 22903
          Telephone:     (804) 501-8272
          Facsimile:      (202) 318-4098
          Email:          **stevenbiss@earthlink.net**

          *Counsel for the Plaintiff*