UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| TREVOR FITZGIBBON, | ) |
| Plaintiff, | ) ) ) Civil Action No. 3:19-cv-477-REP |
| vs. | ) ) |
| JESSELYN A. RADACK, | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT JESSELYN A. RADACK'S REPLY BRIEF SUPPORTING MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)**

Defendant Jesselyn Radack ("Radack" or "Defendant"), by counsel, states as follows for her Reply Brief Supporting Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1).

## INTRODUCTION

Normally, the amount claimed in good faith by the plaintiff is the amount in controversy. In this case, however, the Plaintiff has not acted in good faith and has failed to show that the amount in controversy exceeds the jurisdictional limit.[1]  The parties agree that a valid and enforceable Settlement Agreement exists. *See* Am. Compl. ¶ 23; Radack's Answer ¶ 23 (Dkt. No. 23).  The liquidated damages clause in the Settlement Agreement is clear, unambiguous, and its purpose is expressly stated.  The parties envisioned that future social media offenses may occur, and the Settlement Agreement provides that the amount of damages for each such offense is $1,000.  Therefore, even assuming *arguendo* that Plaintiff could prove the 20 alleged social media

---

[1] One example of the purely conjectured damages is exhibited by Plaintiff's increase in compensatory damages by $1,000,000 between the original Complaint filed in June and the Amended Complaint filed in September.

1

offenses set forth in his Amended Complaint, the most Plaintiff would be entitled to recover is $20,000. The Settlement Agreement does provide for recovery of attorney's fees which in limited circumstances can be included in the amount in controversy calculation, but Plaintiff's inordinate, contrived, and unsubstantiated request for $250,000 in attorney's fees should be disregarded as explained in further detail below.

## ARGUMENT

I. **This Court can, and should, review the liquidated damages clause in determining whether subject matter jurisdiction exists.**

The 4th Circuit Court of Appeals has held that while good faith is a salient factor in determining whether the jurisdictional threshold has been met, it alone does not control; for if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case should be dismissed for lack of jurisdiction. *Nixon v. Loyal Order of Moose Lodge,* 285 F.2d 250, 252 (4th Cir. 1960) (citations omitted). It is apparent, to a legal certainty, that Plaintiff cannot recover more than $20,000 in damages in the instant case, which is much less than the $75,000 required to maintain diversity jurisdiction. It is also clear that Plaintiff seeks to escape the terms of his own contract, during which time he was represented by counsel—the same counsel who still represents him.

First, Plaintiff argues that this Court should not consider the liquidated damages clause in the Settlement Agreement at all in assessing the amount in controversy requirement for purposes of Rule 12(b)(1). However, the *Stewart Title Guaranty Co. v. Closure Title and Settlement Co., LLC,* case relied upon by Plaintiff does not support the proposition that a limitation of liability clause cannot warrant dismissal under Rule 12(b)(1). *Stewart Title Guar. Co.,* Case No. 3:18-cv-00058, 2019 U.S. Dist. LEXIS 1429 (W.D. Va. Jan. 3, 2019). Indeed, the *Stewart Title Guaranty* Court explicitly states that it "need not take a definitive position on this question" because the

limitation of liability clause in the *Stewart* case provided for exclusions to the damages cap; there are no such exclusions to the liquidated damages clause in the instant case. *Id.* at *10-11.

As explained by the 7th Circuit, "[s]everal cases hold or imply that a court has the *power* to dismiss for want of jurisdiction after deciding that a limitation-of-lability clause . . . caps damages at less than the jurisdictional amount." *Pratt Cent. Park Ltd. Partnership v. Dames & Moore,* 60 F. 3d 350, 353 (7th Cir. 1995); *see also Valhal Corp. v. Sullivan Assocs.,* 44 F.3d 195, 209 (3rd Cir. 1995) (concluding that "the limitation of liability clause is an enforceable part of the contract which is the basis of this diversity action . . . the maximum possible recovery is $50,000. Therefore, the district court was without subject matter jurisdiction to hear this controversy."); *Rassa v. Rollins Protective Servs., Co.,* 30 F. Supp. 2d 538, 545 (Md. 1998) (holding that "the contractual limitation of liability provision is enforceable . . . [and that the] Court was without subject matter jurisdiction to hear [the] controversy under 28 U.S.C. § 1332(a)" and dismissing the case pursuant to Rule 12(b)(1)). Based upon the foregoing caselaw, the liquidated damages clause can be properly considered at this stage of the proceedings under Rule 12(b)(1).

> **II. The liquidated damages clause at issue limits Plaintiff's recovery for the conduct set forth in Paragraphs 4(a)-(c) of the Settlement Agreement.**

Unlike the limitation of liability clause at issue in the *Stewart* case, the Settlement Agreement here clearly limits the damages which can be recovered for social media posts which are allegedly "of or concerning" the Plaintiff. *Stewart,* 2019 U.S. Dist. LEXIS 1429 at *8-9. The limitation of liability clause in the *Stewart* case stated that damages were limited to $2,500, ***unless*** the loss was due to negligence, fraud, or an intentional act or omission. *Id.* In the instant case, no such exclusions apply. Here, the Settlement Agreement does not state that if a party tweets or posts anything ***intentionally or negligently*** that an exclusion applies to the $1,000 damages cap. The Settlement Agreement also does not say that if a party tweets or posts anything that is

3

independently actionable as defamation that an exclusion applies to the $1,000 per post damages cap. The Settlement Agreement states very broadly that shall either party post, or direct others to post, anything on social media that mentions the other, or that is of or concerning the other, the remedy for such action would be the amount of $1,000 per post. Am. Compl. ¶¶ 17-18. It is clear that the *mens rea* of the party who posts information concerning the other on social media is irrelevant.

The Settlement Agreement goes on to explain the rationale behind the damages cap, which is the fact that it would be "difficult or impossible to determine" damages and that $1,000 is the "most accurate estimate of the damages the non-breaching Party would suffer." Am. Compl. ¶ 18. The Settlement Agreement also prohibits "any disparaging comments" and the word "disparaging" is defined to mean "defamatory." *Id.* at ¶ 17. The fact that the words "defamatory" and "damages" are used in conjunction with anticipated social media posts, makes it clear that the parties contemplated that potentially defamatory statements (which were the basis of the First Radack Action) may be made in the future and agreed to damages for each such occurrence. To allow Plaintiff to reframe such posts as "independent willful torts" and somehow completely sidestep the limitation of the liquidated damages clause, which he agreed would be the measure of damages for this exact conduct, would completely undermine the plain language of the Settlement Agreement.[2]

Plaintiff goes on to argue that Radack cannot enforce the liquidated damages clause and cites to caselaw concerning the first to breach contract principle which is inapplicable for numerous reasons. Primarily, the first to breach doctrine relieves the non-breaching party from further performance of its independent obligations but does not relieve the non-breaching party from

---

[2] Plaintiff seeks to completely ignore the applicability of the liquidated damages clause with respect to all causes of action in the Amended Complaint, including the breach of contract claim, for which he asserts $500,000 in damages.

compliance with contractual provisions that expressly apply ***in the event of the other party's breach***. *See Land & Marine Remediation, Inc. v. BASF Corp.,* Case No. 2:11-cv-239, 2010 U.S. Dist. LEXIS 88601 (E.D. Va. June 26, 2012) *citing Mathews v. PHH Mortgage. Corp.,* 724 S.E.2d 196, 208 (2012). In other words, the liquidated damages clause by its nature was designed to protect, and provide certainty as to damages, in the event the anticipated conduct set forth in the Settlement Agreement were to occur. *See RW Power Partners, L.P. v. Virginia Elec. and Power Co.,* 899 F. Supp. 1490, 1495 (E.D. Va. 1995) (discussing Virginia's common law first to breach rule and recognizing the "equally significant rule," grounded in Virginia law regarding contract interpretation, that "the parties, by agreement, may abrogate such common law principles and, when that occurs, the courts must enforce the clear terms of the agreement"); *see also Starr Elec. Co. v. Federal Ins. Co.,* 15 Va. Cir. 374, 377 (Va. Cir. Ct. 1989) ("Of course, freedom of contract principles, permit parties to alter common law risk allocations by agreement."). Therefore, the first breach principle does not abrogate the mutually agreed upon liquidated damages clause in the Settlement Agreement.

Second, Plaintiff's attempt to subvert the clear intent of the parties which is set forth within the four corners of the intensely negotiated Settlement Agreement is a red herring. Plaintiff, through counsel, participated in the negotiation and drafting of the Settlement Agreement, the parties specifically contemplated that the very acts that Plaintiff complains of in the instant complaint may occur and that they would cause harm to the opposing party. The liquidated damages clause was intended to obviate this type of protracted and expensive litigation by providing an agreed upon damages amount. Plaintiff should not have the ability to choose between either the agreed upon liquidated damages clause or any damages available pursuant to contract, tort, or statutory law. Plaintiff's attempt to completely circumvent the parties' intent, which is set

5

forth unambiguously in the contract, is not only unconscionable but would also undermine the sanctity of contracts. *See Broaddus v. Broaddus,* 144 Va. 727 (1925) ("The sanctity and obligation of contracts are regarded so essential to the public welfare, that where they are freely and voluntarily made by persons sui juris the impairment of their obligation is forbidden by our organic law.").

Plaintiff also asserts, without any clear explanation, that the settlement amount from the First Radack Action is somehow applicable to the amount in controversy in the current case.[3] It is unclear from Plaintiff's brief how the settlement amount in the prior case is at all relevant to the instant case. The *Brown v. Wal-Mart Stores, Inc.* case relied upon by Plaintiff provides no support for Plaintiff's argument because in *Brown* the Court found that a settlement offer, made in the same case, was not dispositive of the amount in controversy inquiry and remanded the case as it failed to meet the amount in controversy requirement under 28 U.S.C. § 1332. *Brown,* Case No. 5:13-cv-00081, 2014 U.S. Dist. LEXIS 1731, *8 (W.D. Va. Jan. 7, 2014). There has been no settlement offer in the instant case and whatever amount was paid to settle the First Radack Action is completely irrelevant and has no bearing on the subject matter jurisdiction inquiry in the instant case.

Lastly, Plaintiff argues that his exorbitant, and clearly arbitrarily selected, request for $250,000 in attorney's fees should be considered in determining whether the amount in controversy exceeds the jurisdictional threshold. While attorney's fees can be computed for amount in controversy purposes if specifically designated by contract, attorney's fees must still be reasonable, and they must be established to a legal certainty. *See Ross v. Inter-Ocean Ins. Co.,*

---

[3] The First Radack Action is only arguably applicable to Plaintiff's fraudulent inducement cause of action which fails to state a claim for which relief may be granted as set forth in Radack's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

6

693 F.2d 659, 661 (7th Cir. 1982) (holding where a litigant has a right based on contract to an award of attorney's fees if he prevails in litigation, a estimate of reasonable attorney's fee can be included in amount-in-controversy calculations); *McKinney v. Stonebridge Life Ins. Co.,* Case No. 4:06-cv-00029, 2006 U.S. Dist. LEXIS 62869, *3 (Sept. 1, 2006). Here, Plaintiff's counsel did not supply the amount of attorney's fees incurred to date, nor did he provide his hourly rate or any other rationale for why he believes $250,000 will reasonably be incurred litigating this dispute. *See Watson v. Provident Life & Accident Inc. Co.,* Case No. 3:08-cv-2065, 2009 U.S. Dist. LEXIS 43423, *17-20 (N.D. Tx. May 22, 2009) (the court reviewed an affidavit from defendant's attorney which provided the amount incurred to date and estimated the total attorney fee's anticipated based upon that attorney's hourly rate and the estimated number of hours to be spent in the case). In the case of *Jones v. Am. Bankers Ins. Co.*, the defendant provided a declaration from an expert as to probable costs of litigation and amount of attorney's fees, and the Court still found that the defendant had failed to show that asserted attorney's fees are not merely speculative. *Jones,* Case No. 11-cv-00140, 2011 U.S. Dist. LEXIS 66953, *12-13 (D. Colo. June 23, 2011). The *Jones* Court stated "[i]t is far too speculative, even with a declaration, for the Court to infer that the attorney's fees will raise the current amount in controversy by over $40,000 to exceed the $75,000 threshold . . . given that the case is in its infancy, one would have to engage in sheer speculation to determine the amount of fees that might ultimately be awarded on the present record." *Id.* The record in the instant case suffers from the same fatal defect.

  Moreover, if Plaintiff is limited to the damages provided for by the liquidated damages clause in the Settlement Agreement, the only issue to be decided by the Court is whether the 20 alleged social media posts are "of or concerning" the Plaintiff. The Settlement Agreement even defines whether a statement is "of or concerning a Party," it provides that "if a publication was

intended to refer to him/her and would be so understood by persons reading it who knew him/her or if the publication was in its description or identification such as to lead those who knew or knew of the Party to believe that the statement was intended to refer to him/her." Am. Compl. ¶ 17. The exercise of applying this definition to the subject social media posts is not at all complex; thus, experience and common sense suggest that the attorney's fees requested by Plaintiff are unreasonable.

## CONCLUSION

When weighing the overall complexity of this action, and the maximum amount of damages recoverable, coupled with the attorney's fees likely to be incurred, it is clear Plaintiff's claims do not exceed the jurisdictional threshold. For this reason and those set forth above, Defendant Jesselyn Radack respectfully requests that the Court grant her Motion to Dismiss and dismiss with prejudice Plaintiff's Amended Complaint pursuant to Fed. R. Civil P. 12(b)(1).

Dated this 8th day of November, 2019

    /s/ D. Margeaux Thomas
D. Margeaux Thomas (VSB #75582)
The Thomas Law Office PLC
11130 Fairfax Blvd., Suite 200-G
Fairfax, VA 22030
Telephone: 703.957.2577
Facsimile: 703.957.2578
Email: mthomas@thomaslawplc.com
*Counsel for Defendant Jesselyn A. Radack*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 8, 2019, a copy of the foregoing document was filed with the Court electronically. Notice of this filing will be sent automatically by the Court's CM/ECF system to the following parties:

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, VA 22903
*Counsel for Plaintiff*

                                  /s/ D. Margeaux Thomas
                                  D. Margeaux Thomas (VSB #75582)