IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TREVOR FITZGIBBON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-477-REP |
| ) | |
| ) | |
| JESSELYN A. RADACK ) | |
| ) | |
| Defendant. ) | |
| ) | |

# MEMORANDUM IN OPPOSITION
# TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

Plaintiff, Trevor Fitzgibbon ("Plaintiff"), by counsel, pursuant to Local Civil Rule 7(F), respectfully submits this Memorandum in Opposition to the motion to dismiss pursuant to Rule 12(b)(1) [*ECF No. 47*] filed by defendant, Jesselyn Radack ("Defendant").

## I. Introduction

This is an action for fraud in the inducement, breach of contract, defamation, common law conspiracy, personal trespass and computer harassment. The case arises out of misrepresentations made in Virginia that induced Plaintiff to settle and dismiss with prejudice a lawsuit pending in this Court. [*Fitzgibbon v. Radack*, Case 3:19-cv-247-REP (the "First Action")]. In addition to breach of a settlement agreement accepted in Virginia, performed in Virginia and governed by Virginia law, Plaintiff asserts independent tort claims of defamation, common law conspiracy and personal trespass and

1

computer harassment. [*See, e.g., ECF No. 13 ("Amended Complaint")*, ¶¶ 10-47]. Plaintiff alleges that he suffered damages as a result of the Defendant's acts, including the loss of his viable claims stated in the First Action and presumed and actual damages for defamation that occurred after settlement of the First Action, in the sum of $4,350,000.00. [*Id., p. 1*, ¶¶ *16, 36, 43, 47*].[1] Plaintiff alleges that the District Court has subject matter jurisdiction pursuant to Title 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. [*Id.,* ¶¶ *5, 6, 7*].

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(1) tests a district court's subject matter jurisdiction. Typically, the Court must accept as true all material factual allegations in the complaint and construe the complaint in the plaintiff's favor. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). But where a defendant challenges the factual basis for subject matter jurisdiction, "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-348 (4th Cir. 2009). "Unless the jurisdictional facts are intertwined with the facts central to the merits of the dispute," the district court may "go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings." *Id.* at 348. "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a

---

[1] In his original complaint filed on June 28, 2019, Plaintiff claimed damages in the total sum of $3,350,000. As a result of Defendant's continuing breaches of the settlement agreement and continuing defamation, Plaintiff increased his *ad damnum* to $4,350,000 in an amended complaint filed on September 29, 2019. **Even after Plaintiff filed his second amended complaint, Defendant continues to brazenly violate the settlement by, *inter alia*, publishing tweets that mention Plaintiff.**

2

matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### III. Discussion

Defendant concedes that the parties are completely diverse.

Defendant argues that Plaintiff fails to allege that the amount in controversy is in excess of $75,000.

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Gilmore v. Jones*, 370 F.Supp.3d 630, 649 (W.D. Va. 2019) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (citing *Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 276 (1977) ("'[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.'") (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288 (1938))). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010). Parties seeking dismissal for an insufficient amount in controversy "shoulder a heavy burden" of demonstrating that the "legal impossibility" of the claimed recovery is "so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.*; *Wiggins v. N. Am. Equitable Life Assur. Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981) (quoting *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957)). This difficult showing makes "dismissal on jurisdictional amount grounds rare." *Schur v. Zackrison*, 2015 WL 8484441 (E.D. Va. 2015) (quoting *Work v. U.S. Trade, Inc.*, 747 F. Supp. 1184, 1188 (E.D. Va. 1990)).

Plaintiff's amount-in-controversy allegations are made in good faith. Defendant offers no evidence and no argument to the contrary.

The sole basis of Defendant's motion to dismiss is paragraph 4(e) of the parties' settlement agreement. Defendant argues, without evidence, that paragraph 4(e) limits the Plaintiff's recovery *on all claims*, including Plaintiff's independent tort claims, to "at most $20,000". Paragraph 4(e) of the settlement agreement reads as follows:

> e. The Parties acknowledge and agree that a material breach of the provisions of this paragraph 4 would result in significant damage to the non-breaching Party. The Parties hereby acknowledge and agree that the amount of damages in the event of a material breach of the provisions of this paragraph 4 would be difficult or impossible to determine and that the amount $1,000 for each tweet, retweet, reply, like, post or comment that violates paragraphs 4(a), 4(b)( or 4(c) is the best and most accurate estimate of the damages the non-breaching Party would suffer in the event of a material breach of this paragraph 4, that such estimate is reasonable under the circumstances existing as of the date of this Agreement and under the circumstances that the Parties reasonably anticipate would exist at the time of such material breach and that the breaching Party agrees to pay the non-breaching Party that amount as liquidated damages, and not as a penalty, if the non-breaching Party asserts, and a court of competent jurisdiction confirms, such a material breach. The burden of proof in any action alleging a breach of this paragraph 4 shall be proof by clear and convincing evidence.

The Court should deny Defendant's motion for several reasons:

First, the Court should not consider the "liquidated damages" clause at all in assessing the amount-in-controversy requirement for purposes of a Rule 12(b)(1) motion. *See, e.g., Stewart Title Guaranty Co. v. Closure Title and Settlement Co., LLC*, 2019 WL 97045, at * 4-5 (W.D. Va. 2019) ("The Fourth Circuit has not addressed whether a district court should consider a limitation of liability clause when assessing the amount in controversy requirement for purposes of a Rule 12(b)(1) motion. District courts in this circuit have reached different conclusions about whether limitation of liability clauses can be considered at this stage. Moreover, other circuits are split on this question. Here, for two reasons, the Court need not take a definitive position on this question. First, because of the uncertainty in this and other circuits about whether a limitation of liability

4

clause can properly be considered at the Rule 12(b)(1) stage, Closure Title cannot meet its 'heavy burden' of showing 'to a legal certainty' that the Agreement's limitation of liability clauses prevent Stewart Title from recovering the damages amount claimed. *JTH Tax, Inc.*, 624 F.3d at 638. Second, even assuming that the Agreement's limitation of liability clauses can properly be considered at the Rule 12(b)(1) stage, Closure Title fails to show to a legal certainty that these clauses apply to Stewart Title's claims.") (citations and quotations omitted).

Second, as in *Stewart Title*, Defendant fails to show to a "legal certainty" that paragraph 4(e) of the settlement agreement applies to Plaintiff's tort claims or limits the quantum of damages that Plaintiff may recover in connection with his independent tort claims. While Defendant's tweets about Plaintiff clearly constitute a breach of paragraphs 4(a),[2] 4(b)[3] and/or 4(c)[4] of the settlement agreement, *i.e., breach of contract*, the tweets independently constitute actionable statements for which the common law of defamation provides a remedy and, importantly, Plaintiff has sued for fraud in the inducement of contract. *See Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 346, 297 S.E.2d 647 (1982) (plaintiff sued defendant for its alleged breach of an employment contract and its alleged fraud in inducing plaintiff to resign from one position in return

---

[2] Paragraph 4(a) prohibits the "Parties" to the settlement agreement from tweeting or posting anything that "mentions the other or that is of and concerning the other".

[3] Paragraph 4(b) prohibits that the "Parties" to the settlement agreement from causing a third-party to tweet of post anything that "mentions the other or that is of and concerning the other".

[4] In paragraph 4(c) of the settlement agreement, the Parties agreed to refrain from publishing to any third party or to the print or broadcast media, within social media of any nature, or on the Internet, any "disparaging comments or words that would cause or contribute to such Party being held in disrepute by the public".

5

for a promise, never fulfilled, of employment in another – held that where Plaintiff proved her cause of action for fraud, she was entitled to recover "distress damages", including mental anguish, emotional distress, and humiliation). Paragraph 4(e) does not provide the means of calculating Plaintiff's injuries caused by Defendant's fraud or Plaintiff's presumed or actual damages caused by Defendant's defamation. Paragraph 4(e) only applies "in the event of a material breach of paragraph 4" of the settlement agreement. Paragraph 4(e) of the contract, on its face, does not provide the "sole" or "exclusive" measure of damages in all cases and certainly not in the case where Defendant commits independent, willful torts. *See, e.g., CGI Federal, Inc. v. FCi Federal, Inc.*, 295 Va. 506, 518, 814 S.E.2d 183 (2018) ("CGI argues the terms of the amended teaming agreement cannot be used to limit recovery of fraud damages. We have recognized that a party making fraudulent representations cannot rely on the terms of a contract procured by fraud to defeat recovery in tort.").

Third, Plaintiff has requested an award of punitive damages in connection with his tort claims. It is well-established in Virginia that when a plaintiff proves an intentional tort, "Virginia law permits the trier of fact to award punitive damages." *See, e.g., Shaw v. Titan Corp.,* 255 Va. 535, 545, 498 S.E.2d 696 (1998) (citations omitted); *id. Koffman v. Garnett,* 265 Va. 12, 17, n. 1, 574 S.E.2d 258 (2003) ("Because ... a cause of action for an intentional tort was sufficiently pleaded, on remand, the Koffmans may pursue their claim for punitive damages."); *Foster v. Wintergreen Real Estate Co.*, 2010 WL 11020447, at * 9 (Nelson Cir. 2010) ("The counts for the intentional torts of fraud in the inducement and common law conspiracy have survived the demurrer of the defendants. Thus, the plaintiffs are entitled to assert a claim for punitive damages.

Accordingly, the demurrer to Count XIV for punitive damages is overruled."); *see also Smith v. Litten*, 256 Va. 573, 579, 507 S.E.2d 77 (1998) ("A summary of our opinions shows that if a tortfeasor's tort was intentional rather than negligent, *i.e.,* deliberately committed with intent to harm the victim; or, if a tortfeasor's negligent act or omission in violation of the common law reflects malice, willful or wanton conduct, or a conscious disregard of the victim's common law rights; and if the evidence is sufficient to support an award of compensatory damages, the victim's right to punitive damages and the quantum thereof are jury questions."). To determine whether subject matter jurisdiction is proper, the Court must take into account Plaintiff's demand for punitive damages in the amount of $350,000. *See, e.g., Powers v. Equitable Production Co.*, 2010 WL 547395, at * 3 (W.D. Va. 2010) ("a claim for punitive damages may be used to satisfy the jurisdictional amount in controversy if it is possible for the jury to award punitive damages under the applicable state law") (citations omitted). In *Powers*, the Court ruled as follows:

> Here, Powers claims that representatives of Equitable have purposefully conspired to testify falsely and falsify public records in an effort to deprive him of his ownership interest in certain lands and the coalbed methane located under those lands. If such allegations are true, as they must be assumed to be at this stage, they would 'evince a conscious disregard of the rights of others,' and Powers would be entitled to claim punitive damages in some amount. While a jury considering the facts may not award Powers $10 million in punitives, it could easily award in excess of the jurisdictional amount of more than $75,000.00. That being the case, I find that Powers's Complaint alleges facts specific to satisfy the amount in controversy required by 28 U.S.C. § 1332."

2010 WL 547395, at * 4.

Fourth, there is a dispute over who committed the first material breach of the settlement agreement. If the jury finds that Defendant breached first, she will not be able to enforce the "liquidated damages" clause at all. *See, e.g., Mulugeta v. Ademachew*,

2019 WL 3848940, at * 17 (E.D. Va. 2019) (citing *Virginia Electric and Power Company v. Bransen Energy, Inc.*, 850 F.3d 645, 655 (4th Cir. 2017) (a party who commits the first breach of contract, if material, "is not entitled to enforce the contract" and thereby excuses the nonbreaching party from performance) (citation and quotations omitted). Given the allegations in the parties' pleadings, Defendant cannot prove to a "legal certainty" that the amount in controversy is less than $75,000.

Fifth, the Court can consider the "Settlement Amount" set forth in the parties' settlement agreement and the amount claimed in the First Action as proof of the amount in controversy in this case. *Schur*, 2015 WL 8484441 at * 2 ("When applying this 12(b)(1) analysis, a court may 'consider evidence outside the pleadings without converting the proceeding to one for summary judgment.' Additionally, a court may consider a settlement offer as proof of the amount in controversy under this jurisdictional analysis without conflicting with Federal Rule of Evidence 408's prohibition on the use of settlement offers as evidence. *See Brown v. Wal-Mart Stores, Inc.*, 2014 WL 60044, at * 1 fn. 1 (W.D. Va. 2014) ("Even though settlement offers are inadmissible to prove liability under Rule 408 of the Federal Rules of Evidence, they are admissible to show that the amount in controversy for jurisdictional purposes has been met.") (citations and quotations in original omitted). Defendant fraudulently induced Plaintiff to accept a sum certain to dismiss his claims in the First Action, which he valued at $10,000,000. In light of the ad damnum in the First Action and the Settlement Amount that Defendant agreed to pay to resolve the claims stated in the First Action, Plaintiff obviously and clearly meets the $75,000 jurisdictional threshold under § 1332(a).

Finally, even if Plaintiff was limited to "up to $20,000" in damages for his tort and contract claims stated in this action, Defendant overlooks the fact that if Plaintiff prevails on his breach of contract claim, he will be entitled to an award of attorney's fees. Given Defendant's conduct in the First Action **and** in her failed bankruptcy case **and** in this case to date, these fees will easily exceed $75,000 through trial. *Twin Trees, LLC v. Haring*, 2019 WL 1983064, at * 7 (W.D. Va. 2019) (attorney's fees are not included in the calculation of the amount in controversy under § 1332(a) "unless the fees are provided for by contract or a statute mandates or permits their payment") (citing *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013) ("Generally, attorney's fees are not included in the amount-in-controversy calculation, but courts have created two exceptions to this rule: '(1) if the fees are provided for by contract; or (2) if a statute mandates or allows payment of attorney's fees.' *15–102 Moore's Federal Practice,* Civil § 102.106(6)(a)"); *see Cradle v. Monumental Life Ins. Co.*, 354 F.Supp.2d 632, 635 (E.D. Va. 2005) ("if a state statute makes 'attorney's fees into substantive rights to which the litigants are entitled' then attorney's fees may be considered in calculating the amount in controversy under 28 U.S.C. § 1332"). Here, Plaintiff seeks $250,000 in attorney's fees pursuant to contract and statute. Defendant has introduced no evidence to show that Plaintiff's claim is unreasonable under the circumstances. *Compare McAfee v. Boczar*, 738 F.3d 81, 95 (4th Cir. 2013) (where jury awarded damages of $2,943.60, court of appeals directed that an attorney's fee award of $100,000, exclusive of costs, be entered by the district court on remand).

Defendant has contested every fact. She has counterclaimed for breach of contract. She has deleted every violative tweet, vastly increasing the cost and expense of

this litigation. In spite of the Court's many admonitions to Defendant, she also continues regrettably to use Twitter as a weapon. Defendant now uses Twitter on an almost daily basis to discuss the case and, most recently, to bash Plaintiff's counsel and other clients of Plaintiff's counsel.

## CONCLUSION

Here, the amount in controversy issue is inextricably tied to the underlying merits of Plaintiff's claims. For the reasons stated above, Defendant's motion to dismiss pursuant to Rule 12(b)(1) should be denied.

DATED: January 20, 2020

TREVOR FITZGIBBON

By:   */s/ Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:   (804) 501-8272
      Facsimile:   (202) 318-4098
      Email:   stevenbiss@earthlink.net

*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By: /s/Steven S. Biss
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*