IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TREVOR FITZGIBBON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-477-REP |
| ) | |
| ) | |
| JESSELYN A. RADACK ) | |
| ) | |
| Defendant. ) | |
| ) | |

# MEMORANDUM IN OPPOSITION
# TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Plaintiff, Trevor Fitzgibbon ("Plaintiff"), by counsel, pursuant to Local Civil Rule 7(F), respectfully submits this Memorandum in Opposition to the motion to dismiss pursuant to Rule 12(b)(6) [*ECF No. 50*] filed by defendant, Jesselyn Radack ("Defendant").

## I. INTRODUCTION

This is an action for fraud in the inducement, breach of contract, defamation, common law conspiracy, personal trespass and computer harassment. In Count I of his amended complaint, Plaintiff alleges that the Defendant fraudulently induced him to settle and dismiss with prejudice a lawsuit pending in this Court, *Fitzgibbon v. Radack*, Case 3:19-cv-247-REP (the "First Action"). [*ECF No. 13 ("Second Amended Complaint" ("SAC"), ¶¶ 10-16*]. In Count II, Plaintiff states a claim for breach of contract. [*Id., ¶¶ 17-25*]. In Count III for defamation, Plaintiff alleges that the Defendant and her co-

1

conspirators published false and defamatory statements causing Plaintiff presumed and actual damages. [*SAC, ¶¶ 26-36*]. Count IV states a claim of common law conspiracy. [*Id., ¶¶ 27-43*]. Finally, in Count V, Plaintiff alleges claims for personal tress by computer and computer harassment under Virginia law. [*Id., ¶¶ 44-47*].

The matter is now before the Court on Defendant's motion to dismiss pursuant to Fed. R. Civ P. 12(b)(6). The Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 1367(a). For the reasons stated below, Defendant's motion should be denied.

## II. <u>STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

**A.     COUNT I – Fraud in the Inducement**

The elements of actual fraud are: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Spence v. Griffin*, 236 Va. 21, 28, 372 S.E.2d 595 (1988) (cited in *Nationwide Mut. Ins. Co. v. Hargraves*, 242 Va. 88, 92, 405 S.E.2d 848 (1991) ("The injured party must have been damaged as a result of his reliance on the misrepresentation which may take the form of silence or the failure to speak.")). In fraud cases, "a fact is material when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred." *Spence*, 236 Va. at 28 fn*, 372 S.E.2d at 598 (quoting *Packard Norfolk v. Miller*, 198 Va. 577, 563, 95 S.E.2d 207 (1956)) (further citations omitted)).

It is well-established in Virginia that a "false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract by a court of equity" ***and*** fraud in the inducement of a contract "is also ground for an action for damages in a court of law." *George Robberrecht Seafood, Inc. v. Maitland Brothers Company, Inc.* 220 Va. 109, 111-

3

112, 255 S.E.2d 682 (1979) (citations and quotations omitted); *Nationwide Mut. Ins. Co. v. Martin*, 210 Va. 354, 171 S.E.2d 239 (1960) ("There is no instrument so solemn, there is no judgment or decree so binding, but that, if fraud in its procurement be alleged and proved, it ceases to protect the wrong doer or to obstruct the injured in the assertion of their rights") (quoting *Norfolk & W.R. Co. v. Mills*, 91 Va. 613, 641, 22 S.E. 556 (1895) (Keith, J., concurring)).[1]  Most recently, the Virginia Supreme Court held that:

> "[t]o survive a demurrer, Edwards was required to plead that Manry and Selective made false statements of material fact for the purpose of procuring the contract, that it relied on those statements and was induced by the statements to enter into the contract. *Max Meadows Land & Imp. Co. v. Brady,* 92 Va. 71, 22 S.E. 845 (1895).  With regard to both Selective and Manry, Edwards specifically alleged that they had 'falsely represented the material fact of the amount of property and business income necessary for Edwards.'  Edwards further asserted that Selective and Manry intended for it to 'rely on these false representations,' which it did, to its detriment.  Therefore, Edwards' complaint contains sufficient allegations regarding each required element of its claim."

*S. Wallace Edwards and Sons, Inc. v. Selective Way Insurance Company*, 2019 WL 6041123, at * 3 (Va. 2019).

"[R]eliance is a fact-intensive inquiry that is usually inappropriate for a motion to dismiss." *Carlucci v. Han*, 907 F.Supp.2d 709, 741 (E.D. Va. 2012); *Smith v. Flagler Bank, F.S.B.*, 2015 WL 1221270, at * 5 (E.D. Va. 2015) ("Although Plaintiff does not plead any prudent investigation on his part, at this stage in the litigation the Court cannot say as a matter of law that Plaintiff acted unreasonably."); *Yankah v. Mack*, 2015 WL 539586, at * 3 (E.D. Va. 2015) ("Yankah cannot call Mack's reliance on her lies unreasonable just because Mack could have figured out that she was lying if he had run her credit report.  Moreover, reasonable reliance is a question of fact, and considered 'in

---

[1] Here, unlike the case in *Metrocall* and *Muryama*, Plaintiff does not seek to rescind or vitiate the settlement agreement.  Rather, Plaintiff sues for money damages as a result of Defendant's fraud.

4

light of the totality of the circumstances.'") (quotation omitted); *Cook v. CitiFinancial, Inc.*, 2014 WL 2040070, at * 4 (W.D. Va. 2014) ("The issue of whether a party reasonably relied on representations is ordinarily a question for the trier of fact to determine. *See Bank of Montreal,* 193 F.3d at 834 (noting that the reasonableness of a party's reliance is a 'question[] to be decided by the jury in light of, *inter alia,* the nature of the parties and the transaction, the representations, omissions, and distractions presented by the defendant, and the duties of investigation assumed by the plaintiff'); *Miller v. Premier Corp.,* 608 F.2d 973, 982 (4th Cir. 1979) (emphasizing that the 'issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the trier of fact'")); *see id. Steffan v. Freeman Assoc., Inc.*, 2002 WL 32073957, at * 7 (Norfolk Cir. 2002) (the "the resulting knowledge that each buyer gained from his inspection and the reasonableness of each buyer's reliance on the [defendant's] brochures are disputed questions of fact" – motion for summary judgment denied); *Messer v. Re/Max Properties, Inc.*, 1985 WL 306771, at * 1 (Fairfax Cir. 1985) ("A vendor who intentionally misrepresents a material fact to a buyer upon which the buyer reasonably relies to his detriment is liable to that buyer … Count I states a cause of action against the agent for fraud. The issues of reasonable reliance, duty to investigate the facts, and 'dealer's talk,' and other defenses are all matters for trial."); *Fisher v. Frank*, 1984 WL 276310, at * 1 (Warren County 1984) (reliance "cannot be [determined as] a matter of law given the background set forth in the pleadings but is a question of fact to be determined by a fact finder.").

In *Beatley v. Ayers*, the plaintiff sued three former business colleagues for breach of contract, conspiracy to breach a contract, fraud in the inducement of a settlement agreement, and conspiracy to commit fraud. District Court found that one defendant committed fraud in the inducement – that is, he falsely represented that he intended to perform the settlement, when, in fact, he "intended to breach from the start." 2019 WL 2606840, at * 6 (E.D. Va. 2019). The Court found as follows:

> "Clear and convincing evidence shows that Ayers never intended to pay money to Beatley. Just a few days after the mediation, Ayers wrote to Woodfin Jr. and said that he had a plan; the plan was to make sure that Beatley got no money. For almost a year, Ayers assiduously lobbied Woodfin Jr. to throw roadblocks to Beatley's recovery. Ayers misstated the terms of the agreement to the Bank and Habenicht. Ayers believed that if Woodfin Jr. put enough pressure on Beatley, no money would change hands and Ayers could keep his portion of the $134,000.
>
> By the same token, Ayers had no intention of relieving Beatley of the obligation to pay $157,195 to the Bank. His 'best efforts' to get Beatley off the loan consisted of a brief letter and a voice message, neither of which the Bank responded to. Ayers' efforts to avoid paying the $134,000 demonstrate the gymnastics he will undertake to accomplish something that benefits him. Contrasting those efforts with his efforts to get Beatley off the note, it grows clear that Ayers had no intent to perform this obligation under the settlement agreement.
>
> Nor did he intend to pay the note when due. Ayers falsely claimed at trial that he did not know that Woodfin had posted collateral to cover the note. But in an earlier letter to the Bank, Ayers observed that Woodfin had used his assets to collateralize the note. Ayers simply waited for the Bank to call the note and apply Woodfin Sr.'s assets to its payments, leaving Beatley to settle up with Woodfin Sr.'s estate.
>
> A review of the totality of the circumstances shows that Ayers had no intention of performing any obligations under the settlement agreement. He is guilty of fraud."

*Id.* at * 8-9.

In this case, as in *Ayers*, Defendant misrepresented and concealed her present intention to comply with the settlement agreement. [*SAC, ¶ 14 ("Radack misrepresented*

6

*and concealed the fact that she planned and intended to continue defaming Fitzgibbon on Twitter. Radack acted under false and deceitful pretenses to obtain a dismissal of Fitzgibbon's viable claims stated in the Radack Action.")*]. Plaintiff alleges that the Defendant's fraud induced him to dismiss the First Action with prejudice. Plaintiff further asserts that he reasonably and justifiably relied on Defendant's representations by dismissing his action on May 2, 2019. [*SAC, ¶ 12*]. Whether Plaintiff's reliance on Defendant, an attorney, was reasonable is a question of fact that cannot be resolved without discovery. As in *Ayers*, the Defendant's true colors only became apparent ***after*** the Plaintiff settled and dismissed his viable claims against Defendant. As alleged in Plaintiff's second amended complaint, Defendant and her confederates continued the defamation campaign on May 3, 2019 with the following tweets:



[*SAC, ¶ 27*].

The "duty not to commit fraud" is a common-law duty that exists independent of any contract. Indeed, "Virginia law recognizes the separate tort of fraud, even where the

7

parties have agreed to a contract." *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 446-447 (4th Cir. 1990). Here, Defendant breached common law duties when she fraudulently induced Plaintiff to enter into the settlement agreement and dismiss the First Action. The Court should deny Defendant's motion to dismiss Count I for fraud in the inducement.

B. **COUNT II – Breach of Contract**

Defendant agrees that Count II of Plaintiff's amended complaint states a claim upon which relief can be granted. Defendant does not move to dismiss Count II.

C. **COUNT III – Defamation**

> "A slander is preserved in no fixed or permanent form. It ordinarily soon fades out and is forgotten like the sound that carries it. But one who publishes a libel in a newspaper or pamphlet which circulates among many people, or even in a private letter, thereby places it in permanent form where it will be more likely to continue in existence and to be read by many people, and where he causes it to be published in a newspaper or magazine he thereby evidences his intention that the readers shall read it, so that the natural and probable effect of publishing a libel is far more permanent, extensive and injurious to the victim than the mere speaking of the words it contains to one or more persons."

*James v. Powell*, 154 Va. 96, 113-114, 152 S.E 539 (1930) (quoting *Maytag v. Cummins*, 260 F. 74, 80 (8th Cir. 1919)).

From the beginning of recorded legal history, the law has faithfully protected a person's "absolute" right to an unimpaired reputation. In *Fuller v. Edwards*, the Virginia Supreme Court recognized that "[o]ne's right to an unimpaired limb and to an unimpaired reputation are, in each instance, absolute and has been since common law governed England. Indeed, an impaired reputation is at times more disastrous than a broken leg." 180 Va. 191, 198, 22 S.E.2d 26 (1942) (cited in *Gazette, Inc. v. Harris*, 229 Va. 1, 7, 325 S.E.2d 713 (1985) ("In Virginia, as in other states, the law of defamation historically has

8

protected a basic interest. The individual's right to personal security includ[ing] his uninterrupted entitlement to enjoyment of his reputation.")); *id. Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 12 (1990) ("Good name in man and woman, dear my lord, Is the immediate jewel of their souls. Who steals my purse steals trash; 'Tis something, nothing; 'Twas mine, `tis his, and has been slave to thousands; But he that filches from me my good name Robs me of that which not enriches him, And makes me poor indeed.") (quoting WILLIAM SHAKESPEARE, OTHELLO, act 3 sc. 3)). Importantly, in *Rosenblatt v. Baer*, the United States Supreme Court expressly affirmed that:

> "'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.' The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty … The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored … Surely if the 1950's taught us anything, they taught us that the poisonous atmosphere of the easy lie can infect and degrade a whole society."

383 U.S. 75, 92-93 (1966).

Under Virginia law, the elements of a claim of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013). "To prevail on a claim for defamation, a party must prove by a preponderance of the evidence that the allegedly defamatory statements are both false and defamatory, so 'harm[ing] the reputation of another as to lower [her or] him in the estimation of the community or to deter third persons from associating or dealing with [her or] him.'" *Steele v. Goodman*, 382 F.Supp.3d 403, 418-419 (E.D. Va. 2019) (quoting *Cook, Heyward, Lee, Hopper, & Feehan, P.C. v. Trump Virginia Acquisitions, LLC*, 2012 WL 1898616, at * 3 (E.D. Va. 2012)).

9

At common law, defamatory words that are actionable *per se* include (1) statements that "impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished", (2) statements "which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment, and (3) statements which prejudice such person in his profession or trade. *Tronfeld v. Nationwide Mutual Insurance Company*, 272 Va. 709, 713, 636 S.E.2d 447 (2006) (citing *Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632 (1981)). Defamatory language "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Schaecher v. Bouffault*, 290 Va. 83, 92, 772 S.E.2d 589 (2015).

It is not necessary that a defamatory statement be made in direct terms. A statement that is not directly defamatory or that is literally true may nonetheless suggest a defamatory meaning in an indirect way, that is, by inference, implication or insinuation. Where a plaintiff alleges that he has been defamed by an implication or insinuation arising from facts, the alleged implication must be reasonably drawn from the words actually used. The implication proposed by the plaintiff must appear from the ordinary and common meaning of the words spoken or printed by the defendant. In determining whether the defendant's statements expresses a defamatory meaning by implication, the Court must consider the words themselves and all circumstances surrounding the making and publication of the statement which would reasonably cause the statement to convey a defamatory meaning to its recipient. *Pendleton v. Newsome*, 290 Va. 162, 172, 772

S.E.2d 759 (2015) ("Assuming, as we must, the truth of all the facts properly pleaded by the plaintiff, and giving her the benefit of all facts implied and fairly and justly inferred from them, we conclude that in the context set forth in the complaint, the words ascribed to the defendants, given their plain meaning, are reasonably capable of conveying the defamatory innuendo of which the plaintiff complains."); *see also Carwile v. Richmond*, 196 Va. 1, 8-9, 82 S.E.2d 588 (1954) ("While the defamatory language does not in express terms charge the plaintiff with a breach of his professional honor, yet, when aided by the innuendo, operating within the scope of its legitimate functions, it does impute conduct tending to injure him in his profession. Consequently, we hold that the plaintiff's motion for judgment states a cause of action and that a material fact is genuinely in dispute, and therefore summary judgment should not have been awarded the defendant.").

"Pure expressions of opinion, not amounting to 'fighting words,' cannot form the basis of an action for defamation." *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E.2d 97 (1985) (statement that plaintiff was "inexperienced" was "pure expression of opinion"); *Harrell v. Colonial Holdings, Inc.*, 923 F.Supp.2d 813, 823 (E.D. Va. 2013) ("Statements of opinion are generally not actionable, because such statements cannot be objectively characterized as true or false.").[2] "Pure expressions of opinion" include "speech which does not contain a provably false factual connotation, or … which cannot reasonably be interpreted as stating actual facts about a person." *Besen v. Parents and Friends of Ex-Gays, Inc.*, 2012 WL 1440183 at * 3 (E.D. Va. 2012) (quotation omitted); *see id. WJLA–*

---

[2] In *Harrell*, the Court held that "[a]llegations of 'illegal' conduct are … clearly actionable, because an accusation that a person's conduct is 'illegal' is objectively provable. Couching such an unequivocal statement as "legal opinion" does not change the analysis." 2013 WL 550424, at * 7.

11

*TV v. Levin,* 264 Va. 140, 156, 564 S.E.2d 383 (2002) ("[s]peech that does not contain a provably false factual connotation" is generally considered "'pure expression[] of opinion.'"). "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." *Fuste v. Riverside Healthcare Ass'n,* 265 Va. 127, 132, 575 S.E.2d 858 (2003). Similarly, "rhetorical hyperbole, even if insulting, offensive, or otherwise inappropriate, is not actionable." *Choi v. Kyu Chul Lee*, 312 Fed. Appx. 551, 553 (4th Cir. 2009) ("the jury found in favor of Choi with regard to the statements describing Choi as a thug and a gangster. On appeal, the appellants contend that those statements should be viewed, as a matter of law, as non-actionable opinion or hyperbole. We disagree.") (citation omitted).

In *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652 (E.D. Va. 2015), the Court observed that there are "two caveats to the 'opinions cannot be defamatory'" rule." First, "statements [of opinion] may be actionable if they have a provably false connotation and are thus capable of being proven true or false." 138 F.Supp.3d at 660. In *Cashion v. Smith*, for instance, the insinuation that a patient "could have made it with better resuscitation [by plaintiff anesthesiologist]" was actionable because "[w]hether the quality of [plaintiff anesthesiologist's] treatment caused or even contributed to the patient's death is an allegation of fact capable of being proven true or false, such as through expert opinion testimony." 286 Va. 327, 337, 749 S.E.2d 526 (2013). Second, a statement of opinion may be actionable when it "reasonably can be construed as a statement of fact" because "it is 'laden with factual content' and the underlying facts are allegedly false." *Id.* (quoting *Andrews v. Virginia Union University,* 2007 WL 4143080, at * 8 (E.D. Va. 2007) (quoting *Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277,

12

362 S.E.2d 32, 43 n. 8 (1987)).[3] Bearing these two caveats in mind, the Court in *Goulmamine* held that many of the statements claimed to be "opinions" were actionable, "either because they may be proven false by an expert witness or because they are laden with factual content and the underlying facts are alleged to be false." *Goulmamine*, 138 F.Supp.3d at 660 (statements of opinion regarding Goulmamine or Goulmamine's relationship with his patients: "he is bad news," variations on "you should find another doctor" or "your doctor won't be in business much longer," and "he may lose his license" were actionable).

The United States Supreme Court has not provided a categorical protection for *all* expressions of opinion. Rather, the Supreme Court has held that a statement merits protection if it "cannot 'reasonably [be] interpreted as stating actual facts about an individual.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (alteration in original) (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)). To determine whether a statement posits facts, the United States Court of Appeals for the Fourth Circuit directs courts to look to the actual language used, as well as the context and general tenor of the statement. *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (citing *Milkovich*, 497 U.S. at 21)). The Supreme Court of Virginia similarly requires an examination of context. *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47-48, 670 S.E.2d 746 (2009) ("The requirement that an allegedly defamatory statement be considered as a whole also is vital to a determination of the truth or falsity of a defamation claim, because defamatory statements may be made by implication,

---

[3] In *Lipscomb*, the statements characterized plaintiff, a school teacher, as "disorganized, erratic, forgetful, and unfair". The Virginia Supreme Court held that these statements were actionable as defamation *per se*. 234 Va. at 282-283, 362 S.E.2d at 43.

13

inference, or insinuation. Thus, the factual portions of an allegedly defamatory statement may not be evaluated for truth or falsity in isolation, but must be considered in view of any accompanying opinion and other stated facts.") (citations omitted).

In his second amended complaint, Plaintiff expressly alleges that the Defendant and her co-conspirators published the following actionable statements of or concerning Plaintiff:[4]

- Plaintiff engaged in "years of stalking, smear campaigns, … and threats against" Defendant's "clients";

- Unity4J is "working for serial rapist Fitzgibbon to harass Jesselyn into silence what [sic he did to her. This is being spearheaded by Fitzgibbon, his girlfriend Diani, and … others";

- Plaintiff "fits every element" on this "Power and Control" wheel, including "Coercion and Threats", "Using Fear", Economic Abuse", "Using Children" and "Emotional Abuse" against Defendant;

- Plaintiff is "a predator and a deranged Julian groupie";

- Defendant was the "victim of deepfakes – doctored vids, texts, images, etc. – weaponized" against her "by a serial predator";

- "My assailant set up an account to stalk & threaten me, my clients, family & friends";

- "Trevor Fitzgibbon contacted me recently … @JesselynRadack says he raped her";[5]

- Plaintiff "should be" a "defendant" in "Aaron Rich's lawsuit" for defamation, falsely implying that Plaintiff had defamed Aaron Rich or engaged in other wrongdoing or breach of duty;

---

[4] In her motion and memorandum, the Defendant fails to address each statement individually. Instead, she refers generally to the "crux of Fitzgibbon's defamation allegations". [ECF No. 51, p. 8]. Thus, it is impossible to say whether and to what extent Defendant challenges Plaintiff's specific allegations.

[5] Defendant's reply, "Wrong on 3 counts", implies that the author of the tweet was right on the allegation that Plaintiff "raped" Defendant.

- Plaintiff "attacked" Defendant;

- Plaintiff wrapped himself in "@wikileaks cape aft #Assange disavowed" Plaintiff;

- Plaintiff used "alts to stalk women";

- Defendant is a "survivor" of "stalking";

- "Trevor Fitzgibbon" is a "serial abuser of women";

- "Trevor Fitzgibbon" is a sexual predator and serial abuser";

- "Trevor Fitzgibbon" is a "serial women abuser";

- Plaintiff is a "SERIAL RAPIST";

- Plaintiff "raped" "Snowden's attorney Jesselyn Radack";

- "One Unity4J member is a serial rapist they've been working for – one "of his rape victims" is "Jesselyn Radack";

- "Fitzgibbon" is a "serial rapist";

- "Suzie gave a platform to serial rapist Fitzgibbon".

[*SAC*, ¶¶ *27, 28, 38*]. Contrary to Defendant's suggestion, these nasty, odious accusations of serious crimes and misconduct are not opinions.

In order for the statements made by the Defendant to be "of or concerning" the Plaintiff, it is not necessary that the Plaintiff be designated by name in the statement, although in many of the statements he is identified by name. It is a sufficient designation of or reference to the Plaintiff if, under all the surrounding circumstances, those who hear or read the statement would reasonably believe that the Plaintiff was the person referred to. Moreover, statements or publications by the same Defendant regarding one specific subject or event and made over a relatively short period of time, some of which clearly identify the Plaintiff and others which do not, may be considered together for the purpose

15

of establishing that the Plaintiff was the person "of or concerning" whom the alleged defamatory statements were made. *Gazette, Inc. v. Harris,* 229 Va. 1, 37, 325 S.E.2d 713 (1985) ("[The plaintiff] need not show that he was mentioned by name in the publication. Instead, the plaintiff satisfies the 'of or concerning' test if he shows that the publication was intended to refer to him and would be so understood by persons reading it who knew him. In other words, the test is met if the plaintiff shows that the publication was 'in its description or identification such as to lead those who knew or knew of the plaintiff to believe that the article was intended to refer to [him].'") (citations omitted).

Each of the actionable statements are "of and concerning" Plaintiff. [*SAC, ¶¶ 24, 26, 27, 28, 38*]. In the First Action, Plaintiff identified a series of tweets, retweets and likes published by Defendant between 2018 and 2019 that, *inter alia*, accused Plaintiff of "sexual abuse", "sexual assault", stalking, and of being a "rapist" and "notorious sexual predator". [*See Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, Case 3:18-cv-247-REP (Document 67)*]. When viewed against the backdrop of Defendant's prior accusations, the statements at issue in this action, which employ the same horrible and hurtful terms, are clearly of or concerning Plaintiff.[6]

**D.    COUNT IV – Common Law Conspiracy**

A common law conspiracy consists of an agreement between two or more persons to accomplish, by some concerted action, an unlawful purpose or a lawful purpose by unlawful means. *Harrell v. Colonial Holdings, Inc.*, 923 F.Supp.2d 813, 825 (E.D. Va. 2013) ("The 'unlawful act' element requires that at least one member of the conspiracy

---

[6]    Defendant concedes that Plaintiff plausibly alleges publication of the statements with the requisite intent, and presumed and actual damages from the defamation. Thus, these elements will not be discussed.

16

commit an 'underlying tort.' … This can include the inducement of a breach of contract or defamation, as alleged in this case.") (citations omitted).

It is well-established that acts of defamation may form the predicate of a claim of civil conspiracy. *Ransome v. O'Bier*, 2017 WL 1437100, at * 4 (E.D. Va. 2017) ("In addition to alleging facts supporting a claim for defamation, Ransome also alleges that O'Bier, Sterrett, and Berman conspired to defame him, and that they used personal email accounts to coordinate and communicate their defamatory publications. The Court therefore denies the motion to dismiss Ransome's Count II common-law conspiracy claim as it relates to defamation."); *Massey Energy Co. v. United Mine Workers*, 2005 WL 3476771, at * 1 (Fairfax Cir. 2005) ("Plaintiffs allege that Defendants conspired to defame and defamed Plaintiffs with the purpose of injuring them in their trade, business, and profession."); *Cobbs v. Commonwealth*, 2001 WL 322728, at * 4-5 (Chesterfield Cir. 2001) (overruling demurrer to conspiracy to defame count); *Carolinas Cement Co. v. Riverton Inv. Co.*, 2000 WL 33340623, at * 6 (Frederick Cir. 2000) ("the Demurrer is overruled to the extent that the conspiracy is based on the defamation of the plaintiff").

Here, Plaintiff identifies the purpose of the conspiracy, the overt acts of defamation committed in furtherance of the joint scheme, who participated in the conspiracy, when and where it occurred – over the airwaves via Twitter. Plaintiff has adequately alleged a claim of common law conspiracy. *Harrell*, 923 F.Supp.2d at 826 ("Even if the heightened standards of Rule 9(b) applied, the Court would find the allegations here to be sufficient. Construed in Defendants' favor, the Counterclaim alleges that Plaintiffs purchased the Strawberry Hill Races Mark on May 24, 2012, and within one week formed an agreement to tortiously injure Defendants"); *T.G. Slater &*

*Son, Inc. v. Donald P. and Patricia A. Brennan, LLC*, 385 F.2d 836, 845-846 (4th Cir. 2004) (complaint alleged that defendants "combined to terminate and interfere with the contractual relationship", and alleged that the parties to the conspiracy acted "together to complete the sale of the farm without paying Slater & Son a commission for the work it performed" and that this conduct was "intentional, purposeful and without lawful justification" resulting in "substantial monetary damages"); *Luckett v. Jennings*, 246 Va. 303, 307-308, 435 S.E.2d 400 (1993) (motion for judgment alleged numerous facts describing actions that defendant took to injure plaintiff in his business and where plaintiff "impliedly alleges that there was an injury").

### E. COUNT V – Personal Trespass and Computer Harassment

Section 18.2-152.12(A) of the Virginia Code creates a private right of action for injury sustained as a result of a violation of the Virginia Computer Crimes Act:

> "Any person whose property or person is injured by reason of a violation of any provision of this article or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent may sue therefor and recover for any damages sustained and the costs of suit. Without limiting the generality of the term, 'damages' shall include loss of profits.[7]

Section 18.2-152.7 of the Virginia Code states that a person is "guilty of the crime of personal trespass by computer when [s]he uses a computer or computer network to cause physical injury to an individual." Under § 18.2-152.7:1 of the Code, a person is guilt of "[h]arassment by computer" if she, "with the intent to coerce, intimidate, or harass any person, shall use a computer or computer network to communicate obscene, vulgar,

---

[7] Statutory injury under the Virginia Computer Crimes Act includes consequential damages. *Hately v. Watts*, 917 F.3d 770, 781 (4th Cir. 2019) ("Here, Hately pleaded sufficient facts to make plausible his claim that he suffered injury under the Virginia Computer Crimes Act. Accordingly, the district court erred by dismissing Hately's Virginia Computer Crimes Act claims").

profane, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act".

In his second amended complaint, Plaintiff alleges that the Defendant used computers or a computer network to cause physical injury to Plaintiff. In support of these allegations, Plaintiff identifies the tweets that were published by Defendant and her co-conspirators via Twitter, *i.e.*, over a computer network. Plaintiff claims that he suffered physical injury and other damages as a direct result of Defendant's use of her computers or computer network. [*SAC,* ¶ *47*]. Plaintiff also alleges that Defendant "with the intent to coerce, intimidate, or harass Fitzgibbon, has also used computers or a computer network to communicate vulgar, profane, and indecent language and to threaten illegal or immoral acts."

Viewing the facts in the light most favorable to Plaintiff, he has sufficiently alleged statutory claims of personal trespass by computer and harassment by computer.

## **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss pursuant to Rule 12(b)(6) should be denied.

DATED: January 21, 2020

Signature of Counsel on Next Page

TREVOR FITZGIBBON

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By: */s/Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*