# **SETTLEMENT AGREEMENT**

THIS SETTLEMENT AGREEMENT ("Agreement"), dated as of the last date set forth on the signature page below, by and among Trevor Fitzgibbon ("Fitzgibbon") and Jesselyn A. Radack ("Radack") (all the parties to this Agreement are collectively referred to as the "Parties"), provides as follows:

## RECITALS

**WHEREAS**, On April 13, 2018, Fitzgibbon commenced an action against Radack in the United States District Court for the Eastern District of Virginia, Richmond Division, Case 3:18-cv-247-REP (E.D. Va.) (the "Fitzgibbon Action"), alleging claims of malicious prosecution, defamation *per se*, insulting words, malicious abuse of process, and common law conspiracy;

**WHEREAS**, On September 23, 2018, Radack filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia, Case 18-00634 (D.C. Bankr.) (the "Radack Bankruptcy Case");

**WHEREAS**, On March 26, 2019, the Parties reached a binding agreement in principle to settle all claims, disputes, controversies, pending motions and other litigation between them, including, without limitation, all matters in the Fitzgibbon Action and the Radack Bankruptcy case, subject only to Bankruptcy Court approval;

**WHEREAS**, The Parties desire to end all disputes and litigation between them, to settle, compromise and resolve all outstanding issues between them, and to memorialize their settlement in a formal contract;

**NOW, THEREFORE**, in consideration of the mutual covenants set forth herein and for value received, the sufficiency of which is acknowledged, the Parties, intending to be legally bound, agree as follows:

## AGREEMENTS

1. <u>Recitals</u>. The Parties acknowledge, agree and stipulate that the preamble and recitals above ("Recitals") are true and accurate in all respects. The Recitals are incorporated in this Agreement by reference and expressly made a part hereof.

2. <u>Statement by Radack</u>. Upon her execution of this Agreement, Radack will publish on her Twitter homepage or timeline [Twitter handle, un~~REDACK~~ted (@JesselynRadack)], the following statement:

**EXHIBIT B**

> "**Since April 2018, I have been involved in litigation with Trevor Fitzgibbon. We have amicably resolved our differences. As part of the settlement, I retract and withdraw every allegation and statement I have ever made about Mr. Fitzgibbon**"

(the "Radack Statement"). For a period of six months from the date of publication of the Radack Statement, Radack will not delete the Radack Statement from her Twitter feed or mute, protect or hide the Radack Statement in any way.

3. <u>Permanent Deletion of Tweets, Retweets, Replies and Likes</u>. Upon her execution of this Agreement, Radack will immediately and permanently delete from her Twitter homepage or home timeline, un~~REDACK~~ted (@JesselynRadack), all tweets, retweets, replies, likes and all other posts of any kind that mention Trevor Fitzgibbon or that are of and concerning Trevor Fitzgibbon, including, without limitation, the tweets, retweets, replies and likes identified in Fitzgibbon's second amended complaint [*Case 3:18-cv-247-REP (ECF No. 60)*] filed in the Fitzgibbon Action and in paragraph 19 of Fitzgibbon's Notice Of Noncompliance With Court's Order Requiring Status Reports and Notice Of Status Of Bankruptcy [*Case 3:18-cv-247-REP (ECF No. 85)*] filed in the Fitzgibbon Action. If Fitzgibbon is aware of any tweets, retweets, replies, likes or any other posts that he believes are "of or concerning him" which are not mentioned in the Fitzgibbon Action or in paragraph 19 of Fitzgibbon's Notice of Noncompliance with Court's Order Requiring Status Reports and Notice Of Status Of Bankruptcy, then Fitzgibbon will provide a list of these items to Radack immediately upon execution of this Agreement. Other than her Twitter account with username un~~REDACK~~ted (@JesselynRadack), Radack has no other Twitter accounts and uses no other Twitter accounts to tweet, retweet, reply, like or otherwise post content on Twitter.

4. <u>Mutual Affirmative Covenants</u>.

    a. The Parties each covenant and agree that they will not tweet, retweet, reply, like or otherwise post anything on Twitter, Facebook, YouTube or any other social media platform, or any other print or media outlet, that mentions the other or that is of and concerning the other. For purposes of this Agreement, a statement is "of and concerning" a Party if the publication was intended to refer to him/her and would be so understood by persons reading it who knew him/her or if the publication was in its description or identification such as to lead those who knew or knew of the Party to believe that the statement was intended to refer to him/her.

    b. The Parties covenant and agree that they will not direct, request, encourage, entice, procure or otherwise cause any third party, including but not limited to any friends, colleagues, or clients of the other, to tweet, retweet, reply, like or otherwise post anything on Twitter, Facebook, YouTube, any other social media platform, or any print or media outlet, that mentions the other or that is of and concerning the other.

     c. In addition to the mutual affirmative covenants in paragraphs 4(a) and 4(b) above, each Party covenants and agrees that they will refrain from publishing, making, printing or communicating, electronically, orally, in writing, or in any other manner, to any third party (excluding family members) or to the print or broadcast media, within social media of any nature, or on the Internet, any disparaging comments or words that would cause or contribute to such Party being held in disrepute by the public.

     d. For purposes of this Agreement, "disparaging" means defamatory, derogatory, deprecating, detracting, and/or pejorative. Nothing herein is intended to restrain or otherwise prohibit disclosures, communications, statements, or comments compelled pursuant to lawful order or process of a judicial, administrative, civil or criminal authority or proceeding.

     e. The Parties acknowledge and agree that a material breach of the provisions of this paragraph 4 would result in significant damage to the non-breaching Party. The Parties hereby acknowledge and agree that the amount of damages in the event of a material breach of the provisions of this paragraph 4 would be difficult or impossible to determine and that the amount $1,000 for each tweet, retweet, reply, like, post or comment that violates paragraphs 4(a), 4(b)( or 4(c) is the best and most accurate estimate of the damages the non-breaching Party would suffer in the event of a material breach of this paragraph 4, that such estimate is reasonable under the circumstances existing as of the date of this Agreement and under the circumstances that the Parties reasonably anticipate would exist at the time of such material breach and that the breaching Party agrees to pay the non-breaching Party that amount as liquidated damages, and not as a penalty, if the non-breaching Party asserts, and a court of competent jurisdiction confirms, such a material breach. The burden of proof in any action alleging a breach of this paragraph 4 shall be proof by clear and convincing evidence.

   5. <u>No Reports</u>. Fitzgibbon agrees that he will not direct, request, encourage, entice, procure or otherwise cause any third party, including but not limited to his attorneys, friends, colleagues, or clients to report, cause to be reported, initiate or cause to be initiated any proceedings against Radack in connection with her conduct prior to the effective date of this Agreement.

   6. <u>Mutual General Releases</u>. For and in consideration of the mutual promises contained in this Agreement, and for such other good and valuable consideration, the receipt of which is hereby acknowledged, each of the Parties and their agents, attorneys, representatives and employees, and each of them, hereby forever release, discharge and acquit the other of and from any and all claims, disputes, controversies, demands, suits, actions, proceedings, causes of action, liens, sums of money, debts, obligations and liabilities of any kind, known or unknown, contractual or sounding in tort, whether pending before a court or tribunal of any kind or not, whether asserted or unasserted, and including, without limitation, the claims stated in the Fitzgibbon Action and the Radack Bankruptcy Case; *provided, however*, that nothing in this Agreement shall constitute or be construed to be a release or waiver of any rights or entitlements created under or pursuant to this Agreement.

a. Nothing in this Agreement shall constitute or be construed to be a covenant not to sue or a discharge, release or waiver of any actions, claims, causes of actions, rights of action or rights that Fitzgibbon may have against Angelo Carusone (@GoAngelo), Media Matters for America (MMFA), Charles Davis (@charliearchy), Melissa Byrne (@mcbyrne), Molly Haigh (@mollyhaigh), Sierra Pedraja-Mohammad (@sierrapedraja), Sean Carlson (@itsthatseanguy), UltraViolet, Brett Abrams, Unbendable Media, Andrew Stepanian (@sparrowmedia), Bailey Lamon (@UpTheCypherPunx), Raymond Johansen (@RayJoha2), and Deanna Zandt. All of Fitzgibbon's claims against such persons are expressly reserved and preserved, and nothing in this Agreement shall impair or abrogate those claims in any way.

b. Any sums recovered by Fitzgibbon in any future litigation against the persons identified in paragraph 6(a) shall not be reduced by the Settlement Amount paid by Radack under and pursuant to this Agreement.

7. <u>Payment of Settlement Amount</u>. Within 15 days of both Parties' execution of this Agreement, Radack will pay Fitzgibbon the amount of $101,541.56 USD in full and final satisfaction of all claims and causes of action alleged in the Fitzgibbon Action and the Radack Bankruptcy Case (the "Settlement Amount"). Radack agrees to pay the Settlement Amount via check made payable to Steven S. Biss In Trust and sent to 300 West Main Street, Suite 102, Charlottesville, Virginia 22903. The Settlement Amount shall be held in trust pending Bankruptcy Court approval of the Parties' settlement and this Agreement.

8. <u>Destruction and Deletion of Emails, Text Messages and Other Messages</u>. Upon their execution of this Agreement, the Parties, respectively, will permanently delete and destroy all emails, text messages, direct messages, iMessages, and other written or electronic communications, including, without limitation, all attachments, exchanged between them.

9. <u>Bankruptcy Court Approval; Dismissal of Bankruptcy</u>. Upon her execution of this Agreement, Radack, by counsel, will file a motion in the Radack Bankruptcy Case pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure to approve the Parties' settlement and requesting that, as part of the settlement, the Radack Bankruptcy Case be dismissed with prejudice. The Parties acknowledge and agree that this Agreement, including the compromises, mutual covenants, releases, and provision for payment of the Settlement Amount, is expressly contingent upon Bankruptcy Court approval. Until the Parties' settlement is approved by the Bankruptcy Court, Radack shall retain all right, title and beneficial interest in the Settlement Amount held in trust by counsel for Fitzgibbon. In the event the Bankruptcy Court does not approve the Parties' settlement, the Settlement Amount shall be immediately returned to Radack.

10. <u>Dismissal Of The Fitzgibbon Action</u>. Upon entry of an Order by the United States Bankruptcy Court dismissing the Radack Bankruptcy Case with prejudice, the Parties, by counsel, will sign and file a Notice and Stipulation of Voluntary Dismissal With Prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure, dismissing the Fitzgibbon Action with prejudice.

11. <u>Dismissal Of The IPA Litigation</u>. On February 14, 2019, Fitzgibbon commenced an action against The Institute for Public Accuracy the United States District Court for the Eastern District of Virginia, Richmond Division, Case 3:19-cv-102-REP (E.D. Va.) (the "IPA Litigation"), alleging claims of defamation *per se*. Upon entry of an Order by the United States Bankruptcy Court dismissing the Radack Bankruptcy Case with prejudice, Fitzgibbon, by counsel, will sign and file a Notice and Stipulation of Voluntary Dismissal With Prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure, dismissing the IPA Litigation Action with prejudice.

12. <u>Confidentiality</u>. The Parties agree that they will not disclose the terms and conditions of this Agreement to any person or entity, directly or indirectly. The Parties agree that they will jointly request, and/or jointly cooperate in requesting, that the approval of these settlement terms remain confidential and that the explicit terms of this settlement remain under seal. Nothing herein is intended to restrain or otherwise prohibit disclosures, communications, or comments (i) to the Parties' attorneys, officers and directors, tax advisors, financial advisors, bankers, and spouses, or (ii) compelled pursuant to lawful order or process of a judicial, administrative, civil or criminal authority or proceeding, or (iii) as required or necessary to enforce this Agreement.

13. <u>No Other Actions or Claims</u>. The Parties warrant, represent, stipulate and agree that, except for the Fitzgibbon Action, the Radack Bankruptcy Case and the IPA Litigation, they have not filed and are not aware of any other actions, proceedings, complaints, claims, causes of action, or any judicial, administrative, civil, or criminal action(s) or proceeding(s) against any Party arising from, relating to, or having as their basis, the matters stated in the Fitzgibbon Action, the Radack Bankruptcy case and/or the IPA Litigation.

14. <u>No Admission of Liability</u>. The Parties acknowledge and agree that neither the execution of this Agreement, nor the tender or receipt of any instrument or payment hereunder, shall be understood as an acknowledgment of responsibility, obligation, admission of liability, or other expression reflecting upon the merits of any position; but rather evidences only a mutual intention and desire to settle and resolve all issues and disputes by compromise.

15. <u>Interpretation and Construction</u>. Each Party acknowledges and agrees that he or she has been represented by counsel and has received independent legal advice regarding the negotiation and execution of this Agreement.

16. <u>Responsibility for Attorneys' Fees and Costs</u>. Each of the Parties hereto shall bear and be responsible for any and all expenses (including any attorney's fees) incurred by him or her associated with the Fitzgibbon Action, the Radack Bankruptcy Case and the IPA Litigation, the negotiation of this Agreement, and with the matters resolved hereby.

17. <u>No Assignment of Claims</u>. The Parties warrant and represent that no other person or entity has any interest in the matters agreed-upon, released and compromised in this Agreement, that they have not assigned or transferred or purported to assign or transfer to any person or entity all or any portion of the matters agreed-upon, released and compromised herein, and that they have full authority to execute this Agreement and make the agreements and transfers provided for herein.

18. <u>Further Assurances</u>. Except as otherwise specifically provided in this Agreement, at any time after the date of this Agreement, upon reasonable request, the Parties shall make, execute and deliver, or will cause to be made, executed or delivered, any document or instrument necessary or appropriate in order to effectuate, complete, perfect, continue, or preserve the agreements and matters referred to in this Agreement.

19. <u>Enforcement of Agreement; Attorneys' Fees</u>. If any suit or action is filed by any Party to enforce any of the terms of this Agreement, the prevailing Party in such suit or action shall be entitled to recover all of their costs, expenses and attorney's fees incurred in connection with such suit, including, without limitation, all costs, expenses and attorney's fees incurred on any appeal, from the non-prevailing Party.

20. <u>Miscellaneous Provisions</u>. The following miscellaneous provisions are a part of this Agreement:

    a. This Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Virginia, without giving effect to principles and provisions thereof relating to conflicts of laws

    b. The terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the Parties and their respective agents, attorneys, representatives, employees, successors and assigns.

    c. There are no intended third-party beneficiaries of this Agreement.

    d. It is the intent of the Parties to resolve all disputes, claims and controversies between and among them as of the date of this Agreement. This Agreement embodies the entire agreement and understanding between the Parties with respect to the subject matter hereof, and supersedes all prior representations, promises, agreements and understandings, written or verbal, express or implied, between such Parties relating to the subject matter hereof. Each Party to this Agreement acknowledges and agrees that in executing this Agreement he, she or it has relied upon no representation, statement, promise or inducement of any kind whatsoever, except those expressly stated in this Agreement.

    e. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the Party or Parties sought to be charged or bound by the alteration or amendment.

    f. A determination that any provision of this Agreement is unenforceable shall not affect the enforceability of any other specific provision or of this Agreement generally.

    g. This Agreement may be signed in counterparts, each of which shall be an original.  Facsimile copies of signatures and copies of signatures in PDF shall be as binding as originals.

**PRIOR TO SIGNING THIS AGREEMENT, THE PARTIES READ AND UNDERSTOOD ALL THE TERMS AND CONDITIONS OF THIS AGREEMENT. THE PARTIES AGREE THAT ALL SUCH TERMS ARE FAIR, EQUITABLE AND COMMERCIALLY REASONABLE. THE PARTIES ACKNOWLEDGE THAT THEY HAVE HAD THE FULL OPPORTUNITY TO CONSULT WITH COUNSEL OF THEIR CHOICE AND THAT THEY HAVE DONE SO PRIOR TO SIGNING THIS AGREEMENT, AND THAT THEY ARE RELYING UPON THEIR OWN BUSINESS JUDGMENT IN DECIDING TO ENTER INTO THIS AGREEMENT. THE PARTIES WARRANT AND REPRESENT THAT THEY ARE COMPETENT TO SIGN THIS AGREEMENT AND THAT THEY HAVE THE FULL POWER AND AUTHORITY TO EXECUTE THIS AGREEMENT AND TO MAKE THE AGREEMENTS AND TO BIND THEMSELVES AS STATED IN THIS AGREEMENT.**

**IN WITNESS WHEREOF**, this Agreement has been executed by the Parties evidencing their intent to be bound hereby, as of the day and year first set forth above.

By:_____  Date:_____
  TREVOR FITZGIBBON

By:_____  Date:_____
  JESSELYN A. RADACK

    f.    A determination that any provision of this Agreement is unenforceable shall not affect the enforceability of any other specific provision or of this Agreement generally.

    g.    This Agreement may be signed in counterparts, each of which shall be an original. Facsimile copies of signatures and copies of signatures in PDF shall be as binding as originals.

PRIOR TO SIGNING THIS AGREEMENT, THE PARTIES READ AND UNDERSTOOD ALL THE TERMS AND CONDITIONS OF THIS AGREEMENT. THE PARTIES AGREE THAT ALL SUCH TERMS ARE FAIR, EQUITABLE AND COMMERCIALLY REASONABLE. THE PARTIES ACKNOWLEDGE THAT THEY HAVE HAD THE FULL OPPORTUNITY TO CONSULT WITH COUNSEL OF THEIR CHOICE AND THAT THEY HAVE DONE SO PRIOR TO SIGNING THIS AGREEMENT, AND THAT THEY ARE RELYING UPON THEIR OWN BUSINESS JUDGMENT IN DECIDING TO ENTER INTO THIS AGREEMENT. THE PARTIES WARRANT AND REPRESENT THAT THEY ARE COMPETENT TO SIGN THIS AGREEMENT AND THAT THEY HAVE THE FULL POWER AND AUTHORITY TO EXECUTE THIS AGREEMENT AND TO MAKE THE AGREEMENTS AND TO BIND THEMSELVES AS STATED IN THIS AGREEMENT.

IN WITNESS WHEREOF, this Agreement has been executed by the Parties evidencing their intent to be bound hereby, as of the day and year first set forth above.

By: _____  Date: 4/9/19
TREVOR FITZGIBBON

By: _____  Date: 4/9/19
JESSELYN A. RADACK

7